Chief Justice Robertson
delivered the Opinion of the Court.
Upon a plea of plene administravit, to a scire facias sued out by Tilford against Flournoy, as administrator of Hutchcraft, to revive a judgment for debt which he had obtained against the intestate, in the county in which the administrator was appointed, and upon which a fieri facias had been returned nulla bona in the decedent’s lifetime — the administrator having, among other things, shown that he had paid the amount of a judgment which one McChord had obtained against him, on a note given by the intestate, the Circuit Court disregarded that payment, and rendered judgment for execution de bonis pro-priis, for sixty six dollars, and quando, for the residue of Tilford's judgment.
*354 The propriety of disallowing the payment on McChord’s judgment, is the principal question to be considered on this writ of error.
There having been no proof of actual notice to the administrator, of the existence of Tilford’s judgment, the decision of the Circuit Judge was erroneous — unless the record of the judgment should, per se, be deemed constructive notice; for it is well settled that a personal representative is not liable for a devastavit in paying debts of inferior dignity, without any notice of any debt of superior dignity.
The first reported case upon the question of constructive notice, to an executor or administrator, of a judgment against the testator or intestate, is that of Littleton vs. Hibbins, Cro. Eliz. 793, which was a scire facias against executors, for reviving a judgment in debt against their testator, and in which, upon a plea of plene administravit, the Court said, that, though the executors had exhausted all the assets in paying bond debts, before they had actual notice of the judgment, their plea was not sustained; “ for that they, at their peril, ought to take “ cognizance of debts upon record, and ought first of all ‘‘ to satisfy them,, and, although the recovery was in an- “ other county than where the testator and executors in- “ habited, it is not material.”
And the same rule was applied in the same way to a decree, in Searle vs. Lane, 2 Vern. 89, and Shafto vs. Powell, 3 Levinz, 355.
But in an anonymous case in And. referred to by Lawrence, Justice, in Hickey vs. Hayster, 6 Term Rep. 388, the Court said that an executor ‘‘ought not to be charged with a judgment of which he had no (actual) notice;” and in Harman vs. Harman, 3 Modern, 115, a concurrent opinion was expressed by the Court, although the point was not judicially decided.
Among other reasons, it was doubtless the hardship of so rigorous a rule as that announced in Littleton vs. Hibbins, and a desire to prevent oscillation and uncertainty respecting a matter so important, that induced the enactment of a statute of 4 and 5 W. & M. declaring, constructively at least, that undocketed judgments in the *355 Superior Courts of Westminster, should not, so far as personal representatives were concerned, be entitled to legal priority to any other demands against them in their fiducial character. That provision in the statute has been construed as declaring, in .effect, that no judgment in any of those Courts shall be deemed constructive notice to an executor or administrator, unless it had been docketed as prescribed by the statute. This was first settled in the case of Hickey vs. Hayter, supra; in which the Court decided, unanimously, that an undocketed judgment was not, as against the executor ,of the debtor, of superior dignity to a simple contract debt, unless the .executor had actual notice of the judgment; and whether even then, he was bound to give it any precedence, was not decided. And the same construction has been since recognized in England, and is stated by Toller and Williams, on executors, and Fonblanque, and other elementary writers, as the established doctrine. But those writers and some judges seem to have entertained the opinion, that undocketed judgments in inferior courts, and statutory bonds having the force, of judgments, are still, in England, entitled to priority over specialty and simple contract debts, on the ground of constructive notice — the statute of W. and M. not expressly applying to them. And therefore, it has been argued in this case, that any judgment in this State, wherever rendered, against a party who afterwards died without satisfying it, should, according to the case of Littleton vs. Hibbins, be deemed constructively known to the personal representative, and that, therefore, as no judgment is required to be docketed here, a payment of a debt of inferior dignity, even without actual notice of such judgment, is at the peril of the fiduciary. But we cannot concur in this conclusion, for two principal reasons:—
Held, that, as ex’rs & adm’rs must be presumed to know what debts exist, against the decedent’s estate, so far as that knowledge would be-obtained by reasonable enquiry ---it is a presumption of law, that an executor or administrator has notice of all judg’ts that were in force against the testator, or intestate, at the time of his death, in the county in which the ex’or or administrator was appointed, and in which the decedent was domiciled at the time of his death, or had resided within one year preceding —Notice of all other judg’ts must be proved, like other facts, by evidence aliunde. And—vide post p. 359, as to judgments on which no ex’on issued for a year and a day.
First. We are far from being perfectly satisfied that the doctrine laid down in Littleton vs. Hibbins was ever the settled law of England. The cases adjudged upon this point prior to the enactment of the statute of W. & M. were conflicting and few, as already shown, and were nearly equipollent. It is true that the master of the rolls, in Herbert's case, 3 Pr. Wms. 115, said incidentally, *356 “ that all executors should be presumed to take notice « of all judgments, even in the inferior courts of law;” but that was an obiter suggestion altogether unjudicial, and he referred, in support of it, only to an elementary and obsolete treatise on the office of executors, which thus stated the law on the authority of the case of Littleton vs. Hibbins.
We must admit also, that, in the case of Mayo vs. Bently, Call's Rep. Judge Fleming recognized the same rule; and that, afterwards, himself and Judge Roane, Judge Tucker contra, reiterated it; [4 Hen. & Mun. 57,] and that Ch. Jus. Marshall seemed, at. least to some extent, to concur in the same view of the law, in the case of Hopkirk vs. Pendleton, decided in the Circuit Court of the United States at Richmond.
These, when associated with Toller, and Williams, and Fonblanque, constitute, we acknowledge, an imposing array.
But the authoritativeness of their opinions and dicta is, in no small degree, shaken by the fact that they all seem to have been governed by the solitary case of Littleton vs. Hibbins, and subsequent suggestions produced by it, without noticing the opposing dicta and decisions, and without considering the true object and effect of the statute of W. & M. which were, as, we think, not to establish the doctrine of Littleton vs. Hibbins in reference to judgments of inferior courts not required to be docketed, but only to mitigate it, so far as it might have been applied to judgments in the superior Courts of Westminster, by requiring them to be registered in a separate book or docket, before they should operate as constructive notice, and to, make such docketed judgments, and only such, so operate; and thus to settle, by legislative authority, that which was mooted as a controverted and unsettled point of law in the Courts of England. Why require the docketing of judgments in the superior courts of general jurisdiction throughout England — and in which most of the important cases of law are known to be decided, and in some one of which, if any where, an executor might reasonably expect to find a judgment against his testator — and nevertheless, still intend that *357 judgments in any of the inferior courts, any where in the kingdom, and undocketed, should operate as constructive notice to a personal representative, who had been no party, and who, in fad, could not be presumed to have any other or better notice of them than he might be presumed to have of other debts? As even undocketed judgments in superior courts of general jurisdiction, should not, in the opinion of Parliament, be entitled to precedence over any other debts — can it be believed that it was understood to be law, that undocketed judgments in inferior tribunals, of limited and local jurisdiction, should, under all circumstances, be deemed to be within the knowledge, actual or potential, of an executor who became such after they had been rendered? Why then did not the statute of W. & M. require all judgments to be docketed? Only, as we believe, because the judgments of local and inferior courts, were not— merely because they were recorded evidence of debt— deemed by Parliament, entitled to operate as constructive notice to the representatives of those against whom they may have been rendered.
And why should a judgment against a testator, operate as constructive notice to his executor, when the lis pendens (which, for some purposes of justice, was, in one sense, made to operate as effectually as notice,) being terminated, the judgment itself is no notice to a stranger? There is no reason for such an anomalous doctrine. But in the- character and jurisdiction of the Courts of Westminster, we can perceive some motive for making such of their judgments as have been so docketed as to be conveniently accessible and certainly ascertainable without unreasonable diligence, operate as constructive notice to executors and administrators; because, as it is their duty to pay judgment debts before others of inferior dignity, they should not be excused for failing to do so on the plea of ignorance of their existence, if, by reasonable inquiry, they might obtain the requisite information.
But it would be unreasonable and impolitic to punish them for honestly applying the assets to the payment of inferior debts, when they not only did not, but could not *358 by ordinary means, know that there were'any judgments entitled to priority. And if the rigid and inconsistent doctrine contended tor m this case, be once established here, no prudent man will ever become an executor or administrator.
We have seen no authoritative adjudged case in which it was ever judicially decided in England, since the enactment of the statute of W. & M. that judgments of inferior courts, not required to be docketed, shall, as a matter of course, be deemed to be within the knowledge of executors or administrators, who had not been parties to them. Even the case of Littleton vs. Hibbins did not so decide; for though, in that case, it was said that an Executor was bound to take notice of a judgment in another county, that may have been, and from any thing reported, was, an obiter suggestion, except so far as it applied to a judgment in one of the superior courts of Westminster. As already suggested, Hickey vs. Hayter, supra, was the first case in which a judicial construction was given to thestatute of 4 and 5 W. & M. and that case, not only was decided a hundred years after the date of the statute, and long since the American Revolution, but clearly assumes, as we think, that judgments to which the statute did not apply were not constructive notice. And certainly subsequent dicta to the contrary, connot be deemed evidences here of the law in England prior to the fourth of July, 1776.
In Hopkirk vs. Pendleton, already referred to, Ch. Jus. Marshall only said, that the executor should be presumed to have had notice of a judgment against his testator in Henrico county, in which he resided.
We are strongly inclined to the opinion, therefore, that it is not, and never was, the law of England that an executor should, at his peril, take notice of all judgments against his testator, in all of the courts of the kingdom.
With some qualification, a judgment creditor should be required to give actual notice of his demand: in many cases it would be as reasonable that he should do so, as it can be that a bond creditor should do it. *359 And it is not denied that an executor cannot be made liable for a devastavit in paying parol debts, without notice of the existence of a bond upon his testator.'
An executor cannot be made liable for a devastavit in paying parol debts,without notice of the existence of any bond.
Judg’ts on which no ex’on issued for a year and a day, do not operate as notice to the personal representative of the defendant.
Second. But if we are mistaken, and such a doctrine as that we have been combatting, is, or ever was, established in England, we should not feel bound to apply it to Kentucky: 1. because it is not a doctrine of the common law, but is a mere judicial interpolation; 2. because it was, as we think, virtually abjured by the policy and objects of the statute of W. & M. which, though never in force here, is sufficient to show that such a doctrine was not considered congenial to the jurisprudence of even England; and 3. because the political, social, physical, ánd juridical character and condition of this country are essentially different from those of England, and must be felt to be such as to forbid that an executor in one extreme of our state should be presumed to know of the existence of a judgment against his testator, in a Justice’s court at another and opposite extreme point.
In this view of the question we fully concur with Judge Tucker’s suggestions and conclusion, in the case of Nimmo’s Ex’r. vs. The Commonwealth, supra.
But though a judgment should not, in our opinion, be, per se, notice to an executor, under all circumstances, still, as personal representatives should be vigilant and faithful, it seems to us but reasonable and just, that they should be presumed to know what might, by reasonable inquiry, be ascertained. An executor or administrator might and should know of all judgments in the county in which he was appointed, and in which his testator or intestate was domiciled at his death, and in any county in which he had lived at any time within one year preceding it. We fix the period thus, because the presumption would be, that all jugdments rendered against the decedent more than a year prior to his death, had been discharged. And it is also our opinion, concurrently with that of Judge Tucker, that a judgment upon which no execution had been issued for a year and a day, should not be entitled to priority "over other debts, without actual notice to the personal representative, *360 that it had not been satisfied — because it could not have been enforced without notice to the party himself by scire facias; and therefore should not operate as constructive notice to his executor or administrator of the continued existence of the debt.
An ex’or, who with notice, (actual or constructive,) of a judg’t against his testator, allows judgment to pass against him, as executor, upon a bond, without pleading the outstanding judg’t, is as much responsible as he would have been, if he had paid the bond without first satisfying the judgment.
With these reasonable exceptions, the question whether a personal representatives had notice of a judgment against his testator or intestate, should be determined as a matter of fact, and not of arbitrary and inflexible law.
The rule we have thus prescribed, seems to us to be dictated by the principles of the common law, and to be as near an approximation to the objects of the law as a general and practical rule can conveniently be.
As the judgment we are considering in this case, had been kept alive by execution, and was renderded in the county in which both the intestate and his administrator resided, the decision of the Circuit Judge respecting it, was, according to the foregoing conclusion, right and proper; for being presumed to have knowledge of it, he ought to have pleaded it in M’Chord’s suit against him, and having failed to do so, is as responsible as he would have been, had he voluntarily paid M’Chord without a suit. This is too well settled-to require the citation of authorities.
Wherefore, it is considered that, as the judgment in this case does not appear to be for a larger sum than the facts in the record authorize, it is affirmed.