Debt.    Commonwealth, for the use of Long, *vs*
Barstow *et al.* Adm'rs of Woods.

ERROR TO THE FRANKLIN CIRCUIT.

*Case* 77.    *Administrators.  Guardians.  Relator.  Notice.*

*April* 11.    JUDGE MARSHALL delivered the opinion of the Court.

The case stated.    JOHN WOODS, having been appointed by the Franklin
County Court guardian of George S. Welch, afterwards
obtained, upon his petition as guardian, a decree of the
Franklin Circuit Court for the sale of a small parcel of
land descended to his ward from S. Moxley, his grand-
father, and received the proceeds of the sale.   Upon the
death of Woods, his widow and M. Barstow were, in
May, 1838, appointed his administrators, by the Frank-
lin County Court.   In June, 1839, Welch transferred all
his interest, derived from his grandfather, Moxley, to R.
Long, who, in September following, filed his bill in the
Franklin Circuit Court, against the administrators of
Woods, making Welch also a defendant, alledging the
sale of the land by Woods, as gurdian, and his receipt of
the proceeds, and exhibiting the record of the proceed-
ings.   In February, 1841, a decree was rendered in that
suit against the administrators, who had not answered
the bill, for $132, the principal and interest for which
the land sold, "to be paid to the complainant out of any
assets in their hands."   An execution on this decree
having been returned *nulla bona*, Long, as relator, insti-
tuted this action of debt in the name of the Common-
wealth, for his use, upon the administration bond against
the administrators and their sureties.

Averments in the declaration, plea, issue and judgment of the Circuit Court.    The declaration alledges that the administrators had
sufficient assets before the return of the execution, but
that they had wasted them, whereby the debt could not
be made, and suggests that his debt having been due from
Woods, as guardian, was entitled to be first paid, &c.
Issue was joined upon a replication to a plea of *plene
administravit;* and upon evidence establishing the fore-

going facts, and proving also that assets greatly exceeding the amount of the decree, had come to the hands of the administrators; that before the commencement of this suit they had paid, in discharge of debts of the intestate of various grades, more than the value of the assets, and among them accounts to a greater amount than the decree; and that they had made a settlement with the County Court, which showed these facts. The Judge to whom the law and facts were submitted, without a jury, rendered a judgment for the defendants.

The most important questions presented in revising this judgment are, whether this debt is entitled to the priority claimed for it in the declaration, and if so, what is the nature and extent of the privilege, and how does it affect the course of administration and the duty and responsibility of the administrators? These questions are not affected by the act of February, 1839, concerning executors, which was passed nine months after administration was granted in this case, and which neither professes to change preexisting rights, as to priority of payment, nor contains any provisions by which the principles which it introduces may be adapted to administrations already begun. But a previous act of 1797, in relation to guardians, expressly declares that, "The estate of a guardian, not under a specific lien, shall, after his death, be liable for whatsoever may be due from him on account of his guardianship to his ward, before any other debt due from such guardian." The most restricted effect that can be given to the principle thus declared, is to say that it establishes a priority in favor of the debts referred to from the time that the representative of the estate has notice of their existence.

It is manifest however that in the absence of any specific lien, the statute, by its terms, gives an absolute and unqualified priority to the debt due by the decedent on account of his guardianship; and it is undoubtedly proper that in applying the statute, full effect should be given to this priority so far as it can be done without imposing unreasonable hazards and duties upon executors and administrators.

The common law, in determining the course of administration, gives the first place to those debts of the dece-

*COMMONWEALTH vs BARSTOW et al.*

By the statute of 1797, "The estate of a guardian, not under a specific lien, shall, after his death, be liable for whatsoever may be due from him on account of his guardianship to his ward, before any other debt due from such guardian."

By the common law, executors and administra-

COMMONWEALTH
*vs*
BARSTOW *et al.*

tors are to pay debts in this order: debts of record, specialty debts, simple contract debts, but this rule is not absolute.

—But, of specialty debts, he is bound from the time of notice, and of the existence of debts of record in the county of decedents death, or where he had recently resided, he is presumed to have knowledge.

Executors and adm'rs are bound to take notice of debts due by their testator or intestate, as administrators or guardians, where the qualification in that character was in the same county with their administration.

dent which are evidenced by record; the second to those due by specialty, and the lowest to simple contract debts. But in applying these principles to the course of administration, and in giving effect to the rights of creditors against executors and administrators, it has been considered that the priority is not in either case absolute and co-extensive with the terms in which the principle is announced, but that it is in each case so qualified as to exact no unreasonable vigilance, and to impose no unreasonable responsibility upon the executor. He is therefore held bound by the priority given to specialty debts from the time of notice only. And even with regard to debts of record, a distinction is made between those which are evidenced by records within the county in which the decedent was *domiciled* at or shortly before his death, and those which may be evidenced by the records of other counties. From the facility of knowing the former it is held to be the duty of the executor to know them, and that knowledge being implied, which it is his duty to have, he is therefore peremptorily bound so to administer the assets as to secure the priority to this class of debtors. But as it is deemed unreasonable to require him to search the records of all the counties in the State, the priority of debts of record out of the county of the domicil depends upon actual notice: *Hutchcraft's administrator* vs *Tilford,* (5 *Dana,* 353.)

In analogy to the doctrine thus established, in regard to the priority of judgment debts, it would seem not unreasonable that, in order to effectuate the priority declared by the statute of 1797, which executors and administrators are bound to know, they should be required at least to know such facts, affecting the course of administration prescribed by this statute, as are evidenced by the records of the county in which the decedent had been domiciled at his death, and in which the probate or administration was granted. And as in this case the records of the County of Franklin, in which the intestate had been domiciled, and the administration granted, and in which the administrators themselves seem also to reside, evidence not only the appointment of Woods as guardian of Welch, but also show the existence and extent of the identical

responsibility which is now sought to be enforced; and as that responsibility arose in a proceeding which Woods, by the general law of the land, was authorized to institute, as guardian, and from the receipt of money, which by the same law he was authorized, as guardian, to receive, so that it was a debt due from him to his ward, on account of his guardianship—we are of opinion that as it was in the power of the administrators, by reasonable diligence, so it was their duty to know of the existence of this debt, that they are therefore to be regarded as having had notice of it, and are absolutely bound by the priority given to it by the statute, for as it had that priority when they took the administration, we cannot admit that by the assignment of it by the ward to Long, more than twelve months afterwards, it was reduced to a lower grade.

From this view of the rights and duties of the parties it follows that as the administrators had sufficient assets in their hands, and as, so far as now appears, there being no specific lien, this demand was entitled to absolute priority in the administration of them, there could be no due administration whereby the assets would be exhausted without payment of this debt: and consequently if the plea of *plene administravit* be not wholly inapplicable and inadmissible, it certainly was not supported by the evidence contained in the bill of exceptions.

The judgment for the defendants cannot therefore be sustained unless upon the ground assumed in argument, that Long, for whose use the action is brought, having been equitable assignee of the debt in the first instance, and having not a judgment but a decree in his favor, cannot occupy the attitude of relator, or in other words cannot institute an action on the bond, for his use. But as, by the decree he is invested fully with the right to receive the money, and with all the interest which his assignor had, and the rights of the assignor are wholly extinguisheda; and as the action, if it cannot be brought by Long cannot be brought by any one, it would be strange indeed if under the statute which authorizes any party to sue on the bond who is injured by a breach thereof, he could not maintain the action. If it could be supposed

*The assignee of a decree rendered in favor of a ward against the administrator of his guardian may sustain a suit as relator on the adm'rs bond—The Com'lth is technically plaintiff, the use is to the relator.*

that a Court of Common Law should not recognize the right of Long to the debt, or the injury to him by its non-payment, because it is evidenced by a decree and not by a judgment, it may be said that he exhibits not only a decree but also an execution, which, being a technically legal precept might be noticed in a Court of Law as evidence of his right.

But supposing Long's interest in the thing demanded should be deemed equitable only, and conceding that if any other person had the legal interest in the debt, that person should stand as relator, still as there is in fact no other person entitled, legally or equitably, to the debt, and as, technically considered, the relator is not the plaintiff in the action but the use only, we do not perceive any inconsistency in permitting the person having this equitable interest to occupy the attitude of relator. Most assuredly, as it seems to us, a creditor having a decree and execution upon a purely equitable demand, might maintain an action, as relator, against the sheriff for misconduct in regard to the execution by which the creditor has suffered injury. This, we think, could not be denied, and yet the language of the statute, in giving the action upon the sheriff's bond to the party injured, is the same as that which gives the action on the executorial bond, and the evidence of the right to which the injury is done by the misconduct of the sheriff in such a case is as purely equitable as is the evidence of the right to which the injury is done by the mal-administration of the executor.

Without pursuing this branch of the subject, we are of opinion that a Court of Common Law may and should recognize Long as the party entitled to the debt, and as the party injured by the mal-administration of the defendants, whereby his decree and execution remain unpaid, and that he may therefore sue, as relator, on the administration bond.

Wherefore the judgment is reversed, and the cause remanded for a new trial in conformity with this opinion.

*Cates & Lindsey and Herndon* for plaintiff: *Todd* for defendants.