# Wood's Executors *vs* Wickliffe.

### APPEAL FROM THE NELSON CIRCUIT.

*Executors.    Assets.    Residuary devisees.    Emancipated Slaves.*

JUDGE BRECK delivered the opinion of the Court.

IN 1824, Nathaniel Wickliffe instituted an action of covenant, in the Nelson Circuit Court, against Nathan B. Wood. Before any trial was had, Wood, having first made his last will and testament, departed this life. His will was proved and admitted to record in 1834, in the Spencer County Court, and James J. Wood and Nathan Deacon were qualified as executors. An order reviv-

WOOD'S EX'RS.
*vs*
WICKLIFFE.

CHANCERY.

*Case* 50.

*Oct.* 14.

The case stated.

Woou's Ex'rs.
*vs*
Wickliffe.

ing the suit of Wickliffe was made in 1835, which was served upon Wood in 1837. In 1841 the suit was tried and Wickliffe obtained a judgment for upwards of $3000, which was subsequently reversed in this Court. Upon the return of the cause it was again tried, and a second judgment was obtained by Wickliffe for $3202. The executors again appealed to this Court, and the judgment was affirmed. After obtaining his first judgment, and before its reversal, Wickliffe exhibited his bill in Chancery against the executors, devisees, and trustees of Wood, alledging his inability to make any portion of his judgment upon execution, and calling upon the executors for a discovery of assets; he also prayed for and obtained an attachment against certain slaves, which he charged belonged to the estate of the deceased, and which were in possession of the defendants, and also against certain other slaves, which had been emancipated by the will, but which were subject to the payment of his judgment. By an amended bill, Wickliffe sets up his last judgment, and also the claim upon which it was founded, against the executors, devisees, and emancipated slaves. The executors having alone answered, the cause was heard and a decree pronounced, from which the executors, who were also devisees, have appealed to this Court.

Decree of the
Circuit Court.

The decree is against the executors in *personam*, for $361, which is directed to be credited upon the judgment; the attached slaves alledged to belong to the estate, are there directed to be sold, and the proceeds applied to the payment of the judgment, and if insufficient for the payment thereof, then the emancipated slaves, or so many of them as may be necessary for that purpose, are decreed to be sold.

The appellants, in the assignment of errors, rely that the decree is erroneous:

Errors assigned
by appellant.

1st. In decreeing assets against them beyond the value of the slaves devised.

2ndly. In decreeing the slaves to be sold.

3rdly. In decreeing the slaves emancipated by the will, to be sold without defence made for them, or such of them as were infants, by a guardian *ad litem*.

4thly. In decreeing an absolute sale of the emancipated slaves.

The appellee relies by way of cross errors, in the event this Court should be of opinion the decree ought to be reversed, that the Court below erred in not decreeing a greater amount against the executors, and in not charging them with the hire of the slaves which they claim as devisees.

In the examination of the several questions presented, it will be necessary in the first place, to advert to and give construction to the will.

The testator first wills and directs that all his just debts and funeral expenses be paid; he then, after making several small specific legacies, provides for the emancipation of five of his slaves, viz: Ann, Eliza, Elizabeth, Bertrand, and Louisa, and the emancipation is directed to take effect at his death. His executors are also directed to pay over to J. J. Wood and Joseph Funk, five hundred and fifty dollars, whom he appoints trustees for certain specific purposes, in reference to the liberated slaves, and directs the manner in which they are to appropriate the five hundred and fifty dollars for their use and benefit. The will then contains this residuary clause: "I give the residue of my estate, in equal portions, to my brother James and my sister Ellenor Deacon."

Besides the manumitted slaves, the testator died possessed of five other slaves and some personal estate. Whether the slaves not liberated, passed directly by the will, to the residuary devisees, or were assets in the hands of the executors for the payment of debts and legacies, is the only material question arising in the construction of the will. Looking to the whole will, it is evident that nothing is given or intended to be given to the residuary devisees, except what may remain after the payment of debts and legacies; and we think it equally clear that the slaves did not pass to them, but were assets in the hands of the executors. It is true under our statute, slaves pass by last will and testament, in the same manner and under the same regulations as landed estate; but this statute has been regarded as embracing only specific devises of slaves; McDowell's administrator, &c. vs Lawless, (6 Monroe, 141.) In this case there is no specific devise, -

*Margin notes:*

Wood's Ex'rs.
vs
Wickliffe.

Cross errors of appellee.

Wood's will construed.

A will provides for the payment of the just debts of the testator, emancipates a portion of the slaves, and devises the remainder of his slaves to certain residuary devisees—held that the slaves not emancipated are assets in the hands of the executors for the payment of debts, and did not pass on the death of the testator to the residuary devisees.

WOOD'S EX'RS.
vs
WICKLIFFE.

The statute de-
claring    that
slaves   devised
shall   pass   as
lands   devised,
applies to slaves
*specifically   de-*
*vised.*

and besides, the will subjects the whole estate, including the slaves, first to the payment of debts and then of specific legacies. The slaves were, therefore, assets in the hands of the executors, and they seem, in some respects, to have so treated them. They had them appraised and inventoried, and in a settlement with the Commissioners of the County Court, they seem to have been treated as constituting a portion of the estate which came to their hands. But the Court below appears to have regarded them as either passing directly by the will, or as having been delivered over by the executors to the residuary devisees. Thus regarding them, the decree is evidently erroneous in decreeing personally against the executors, $361 59. It appears that the whole amount of the personal estate, including a legacy of a gold watch to J. J. Wood, and some other articles bequeathed to Mrs. Deacon, which came into the executors hands, was $1207 39, and according to a County Court settlement, made with them in 1838, they had disbursed, in the payment of debts and expenses of administration, including an allowance for their personal services, very near that amount.

It is contended that many of the items of disbursement in this settlement, are for claims of inferior dignity to the claim of the appellee; but no effort was made by him in his pleadings, or by proof, to surcharge the settlement. Having been made before he exhibited his bill, and no portion of it having been surcharged, it should prevail against his demand, so far as payments had been made to creditors, including expenses and allowance for services; *Burns* vs *Burton*, (1 *Marshall*, 349;) *Wooldridge* vs *Watkins*, (3 *Bibb*, 352;) and *Quinn* vs *Stockton*, (2 *Litt.* 346.)

The pendency of
a suit in a differ-
ent county from
that in which the
testator dies and
executor quali-
fies, is not pre-
sumptive notice
of  the  claim
which will ren-
der the executor
liable personal-
ly.

But giving no validity to the settlement, and testing the disbursements or credits to which the executors are entitled by the vouchers alone, as against the appellee's claim, still we are of opinion the decree cannot be sustained. The executors appear to have had no notice of the claim of the appellee till May, 1837. The order of revivor was then served upon the appellant, Wood, who resided in the county of Spencer. There is no proof of actual notice prior to that time; and the pendency of the

appellees's suit in the county of Nelson, cannot be deemed constructive notice. The will was proved in the county of Spencer, the domicil of the testator had been there, and there the acting executor resided. The other executor resided in Nelson county. The suit had been slumbering upon the docket for ten years, and what, if any steps had been taken in it during that time, does not appear. According to the principles settled in the case of *Hutchcraft's administrator* vs *Tilford*, (5 *Dana*, 353,) and *Commonwealth* vs *Barstow*, (3 *B. Monroe*, 292,) we think the pendency of the appellee's suit was not constructive notice. Most of the disbursements were made before notice, and a portion of the claims discharged were of higher dignity than the claim of the appellee. Besides, it appears that very considerable amounts were subsequently disbursed by the executors, and principally for costs and expenses incident to the administration and settlement of the estate; subsequent settlements were made with County Court Commissioners, and the disbursements allowed, and these settlements were in no way assailed or surcharged by the appellee.

We are, upon the whole, entirely satisfied that the decree is erroneous as to the amount decreed against the executors, on account of the personal estate, irrespective of the slaves. Had they been held responsible for the hire of the slaves, their liability on that account would probably have exceeded the sum decreed against them. But before we examine that question, or consider the second error in reference to the sale of the slaves, we will dispose of the third and fourth errors.

The liberated slaves were devisees, and directly and vitally interested in this controversy. They were necessary parties, and should have been brought regularly before the Court, and as several of them were infants, a guardian should have been appointed for them, who was competent, and would undertake to defend for them ; no answer was filed, and so far as appears from the record, no defence of any kind was made for any of them. We cannot admit that the mere levying an attachment upon infant devisees of the character of these individuals, is bringing them before the Court, so as to authorize a de-

Slaves emancipated by will are necessary parties to a suit against the executor to subject them to sale to satisfy the debts of the testator, and a failure to make them parties is error on which the executor may rely.

WOOD'S EX'RS.
       *vs*
WICKLIFFE.

cree against them.   No decree without defence by a com-
petent guardian, against them, should be sustained.   No
such defence having been made for the infant devisees in
this case, we are of opinion the cause was prematurely
heard, and that the error is one, upon which the appel-
lants may and should rely.

We are of opinion the decree is also erroneous, in de-
creeing an absolute sale of the liberated slaves.   After
exhausting the assets in the hands of the executors, if
any portion of the appellee's claim should still remain
undischarged, as several of the liberated slaves have been
taken under the attachment and hired out since the in-
stitution of this suit, the proceeds of their hire should be
applied in payment of such residue.   And, in the event
of a balance still remaining unpaid, the Court should
apportion such balance among those whose labor is pro-
ductive, and ratably, according to the respective annual
balance of the hire of each; and an opportunity afforded
for the payment of the sums respectively assessed upon
them, or of securing the payment thereof, with interest
upon a liberal credit, by bond with such security as the
Court might approve.   In making such assessment, the
mother with infant children should be assessed in view
of the incumbrance.   It seems to us just and equitable,
that the assessment should be made, and upon the basis
indicated.   It is carrying out as far as practicable, the in-
tentions of the testator, and without prejudice to the
rights of the creditor.   The testator designed all to be
free, and at the same time, and it is right that the labor
of all should be expended for that purpose.

But if the sums assessed should not be paid, nor se-
cured by the emancipated slaves, nor by any one for
them, then they should severally be sold or hired out for
the shortest periods that would bring the sums respective-
ly assessed upon each.   A reasonable credit should be
given for the payment of the respective sums, with inter-
est, the hirer or purchaser giving bond with good securi-
ty.   The mother with infant children should be hired to-
gether.

It remains to consider the second error, and in con-
nection with which the cross errors of the appellee, will

*Margin note:* It is error to de-cree the absolute sale of slaves which have been emancipated by a testator, for the payment of his debts. But where several have been eman-cipated, the debt should be assess-ed upon each in proportion to the value of the hire and each sold for such length of time, on reason-able credit as will raise such prportion, with interest.

also be considered. It will be recollected, that J. J. Wood, the brother of the testator, and his sister, Elenor Deacon, the wife of Nathan Deacon, were the residuary devisees, and that J. J. Wood and Nathan Deacon, were the executors.

The executors state in their answer, that they had divided the five slaves left by their testator, and which were not emancipated, Wood taking two of the boys, and Deacon the two females, and that the fifth being a boy, Wood had also taken, paying Deacon $250, being one half of his estimated value. That since the division, they had respectively held the slaves thus allotted, as devisees.

In the County Court settlement, made in 1838, nothing is said in reference to the slaves, but the executors are credited for $1158 42, received by them, on account of and in full of their respective distributive shares in the estate of N. B. Wood, deceased, and a receipt by them as devisees to themselves as executors, to that effect, dated in June, 1838, was returned as a voucher, with the report of the settlement.

The executors were also allowed a credit for $550, in virtue| of the receipt of J. J. Wood, and Joseph Funk, Trustees under the will, for that sum, paid to them by Wood, as executor. This receipt bears date in June, 1838. These sums, with the disbursements in the payment of debts and expenses, and the allowance made the executors for their services, absorbed the entire estate.

The executors had actual notice of the claim and suit of the appellee, in May, 1837. We understand their election to hold as devisees, to have been made in June, 1838. There is no evidence of any prior division, or holding as devisees. Shall they be permitted to hold as devisees, or ought they to be treated as holding as executors?

The slaves went into their hands as assets. They had no interest in them whatever, as residuary devisees, till all the debts of their testator were paid. They had actual notice of the claim of the appellee before, so far as appears, they ever claimed to hold as devisees. Under such circumstances, we think they had no right to surrender the slaves as executors to themselves as devisees.

---

WOOD'S EX'RS.
*vs*
WICKLIFFE.

Where slaves which are assets in the hands of executors are divided by the executors who are residuary devisees of such slaves, after notice of outstanding unsatisfied debts against the testator, they are accountable to creditors for the value, and reasonable hire for such slaves.

It was impairing a fund, or rendering unproductive, property, upon the supposition, that as devisees they would not be responsible for hire, to which the appellee had a right to look for the payment of his demand. It was their duty to have retained them as executors, and to have hired them out for the purpose of raising a fund to meet the claim of the appellee. They were in duty bound to do this, in view of carrying out all the provisions of the will, and more especially, for the protection of the manumitted slaves, for one of whom they were specially appointed guardian by their testator, and for the benefit of others, the active executor was appointed a Trustee. We are of opinion they can derive no advantage from this illegal change of these slaves out of one hand into the other. They must be held responsible as executors for a reasonable hire, from the time they came into their possession. Such hire should be appropriated to the liquidation of the appellee's demand.

It results also, from this view of the case, that the slaves decreed to be sold were subject to the demand of the appellee. But we think the Court should first have ascertained the value of the hire, and any balance of the personal estate, and have applied those sums, and then have directed a sale of the slaves.

Upon the return of the cause, a Commissioner should be appointed to ascertain and report the reasonable value of the hire of the slaves since they came into the possession of the executors. The Commissioner should also be directed to ascertain any disbursements which have been made by the executors, since the settlements of 1838 and 1839. The credits allowed the executors in these settlements for disbursements in the payment of debts against the estate, and for costs and expenses in its administration, and for allowances made them, for personal services, will not be disturbed. And upon the foregoing basis, the Commissioner will be directed to report any balance for or against the executors in reference to the personal estate.

We discover that the devisee, Elenor Deacon, has not been brought before the Court; this should be done upon the return of the cause.

The decree is reversed, and the cause remanded for further and appropriate proceedings and decree consistent with the principles of this opinion, and the appellants are entitled to their costs in this court.

*Grigsby* for appellants : *Woolley and Harlan & Craddock* for appellee.