Chief Justice Marshall
delivered the opinion of the Court.
R. P. Oldham, in his lifetime, executed his note to Kleissendorff & Fuist for $500, which was assigned by them to T. M. Tunstall. A judgment was obtained in 1837 by Tunstall against Oldham for the amount of the ■note, with interest and costs, and execution thereon was returned “no property found,” except as to the sum of $52 49 made upon it. Afterwards, in 1840, Kleissendorff having previously died, Tunstall in a suit upon the assignment recovered a judgment against the administratrix and heirs of Kleissendorff for $493 51, bearing interest from the date of the judgment, which was satisfied out of the estate descended to the heirs, in which the administratrix, as widow of the decedent, was entitled to dower. And she having intermarried with Place, and Oldham having died in 1837, shortly after the judgment and execution against him; this bill was filed in 1847 by Place and wife, as administratrix in conjunction with the heirs of Kleissendorff, against Iiaggin, the administrator of Oldham, and his securities, claiming the benefit of the judgment against Old-ham by substitution to the rights of Tunstall, who is made a defendant; and after suggesting that assets to a considerable amount had or should have come to the hands of the administrator, and charging that he had *401 notice of the said judgment and proceedings against his intestate, and that he had appropriated the assets to his own use, and retained them in part for his own debt, disregarding the priority to which said judgment was entitled, and with full notice thereof; prays for a discovery and account, and for a decree against Hag-gin and his securities for the amount due on the judgment against his intestate, and for general relief. Hag-gin denies all notice or knowledge of the judgment against Oldham until within two or three years before this suit was commenced. He states the amount of assets received at a little less than *$800, which he alleges he has duly and fully administered, and he denies that the demand of the complainants is entitled to any priority over those which he has paid and his own which he has retained out of the estate.1
An administrator paying bond debts or simple contract debts of his intestate, when judgment debts existed in the county the intestate had jived smd died, s' : ’’ r la ,*c r./t \ - i íiti ¡ i f; ■ ■ uio personally liable for a mal*admin* istraüon: (Hutch craft*s Ad*r.f vs Ti/fordf 5 Dana 353.)
*401 It appears that Oldham died in Jefferson county, where he had lived for a number of years; that Haggin lived in the same county, and had ample opportunity of knowing the condition of Oldham, and of knowing of the judgment and proceedings of Tunstal against him; that Haggin was appointed administrator by .the Jefferson County Court in November 1837, received shortly afterwards near $800, due to Oldham from the State of Kentucky, which in 'the course of about one year he disbursed in payment of funeral expenses, of judgments against the intestate, and .of his own demand $300 with interest, due by note, and a demand al° so due by note, in which he was the surety of Oldham, on which he paid about $80. No inventory or appraisment had been returned by the administrator, and he had not accounted or settled with the County Court.
As the law stood when this administration was granted, and when the assets were appropriated by the administrator, judgments against the intestate, subsisting and in full force at his death, were entitled to priority over specialties and simple contracts in the administration of the ar-sets, and a violation of this right of priority was a mal-administration, constituting a devastavit, for which the judgment creditor, whose debt re *402 mained unpaid, might hold the administrator personally liable, unless the administrator had not only been ignorant in fact of the existence of the judgment, but was not bound to know or take notice of it: (Hutchcraft’s adm’r vs Tilford, 5 Dana, 353.) And in the case referred to, it was decided upon full consideration of the question, both on principle and authority, that according to the principles of the common law, an executor or administrator was bound to take notice of judgments against the intestate in the same county in which he had lived and died, if the judgments themselves were alive and enforcible by execution at’the time of his death. We are not aware that the principle has, in any subsequent case, been departed from or even doubted. And as it imposes no unreasonable task on the administrator, we see no sufficient reason for questioning its propriety or its application to the present case.
Under this principle the administrator has no right to leave this judgment of Tunstal’s against his intestate unsatisfied and appropriate the assets to the payment of his own debt, due by note, and of another of the same dignity, in which he was surety. And as he was bound to take notice of this judgment, and is chargable, in point of law, with all the consequences of actual notice, whether he had it or not, it follows that in view of the law,, he is chargable with the amount of the assets appropriated to the two debts just referred to, as if they had not been so appropriated, but remained in his hands unadministered. And as they never were duly and legally administered, but in legal contemplation remained in his hands as assets to be appropriated in the due course of administration, Tunstal, as a judgment creditor, might unquestionably have coerced their appropriation to h'is demand by reviving his judgment and suing for a devastavit if the assets were not applied to its payment. And we are inclined to the opinion that he might at once have resorted to a Court of Equity for a discovery and a due application of the assets.
Heirs, against whom a judgment has been recovered in conjunction with the administrator, & who pay the judgment, may in equity be substituted to the right which the judgment creditor had, to file his bill against the administra mr to have a discovery of assets, and be reimbursed in case there has been a mal-administration of assets.
—Butiwhere the administrator in such case claimed a bond debt and a debt paid a s security for his intestate, & had assets sufficient to pay them at the filing of the bill of the heirs: Held th.it though the administration was granted before the act of 1839, that the administrator as tci such debts was entitled lo a pro rata share of the fund so in his hands— he paying interest to the heirs on their part.
*403 But instead of pursuing the estate of Oldham either at law or in equity, Tunstal turned upon the representatives of his assignor, and coerced from them the consideration which he had paid for the assignment, whereby, as we apprehend, they became in equity entitled to the benefit of the judgment and invested with his rights therein. And if a Court of Law might so far regard this equitable right as to allow them to proceed in the name of Tunstal for their benefit to revive the judgment against his administrator, and to institute and carry on an action for a devastavit, if an execution on the judgment should prove unavailing, yet, we are of opinion, that as their rights in this respect were not legal but purely equitable, they were entitled to assert them at once in a Court of Equity, without resorting to the circuitous proceedings in the name of another, which would almost certainly have been requisite if they had revived the judgment and proceded by a writ of Ji. fa. thereon. The assets are not of a character to be reached by execution at law. If the judgment had been revived by scire facias for the benefit of the complainants, the administrator, who now contends that he had duly administered the assets, would, in all probability, have withheld payment. And an action for a devastavit, or a bill for discovery of assets,&c., must have followed. We^think the complainant might properly resort, in the first instance, to the equitable remedy.
We have already said that the appropriation of the assets to the note due to the administrator, and to that in which he was surety for his intestate, was an undue administration, and in effect a devastavit, and that he remains liable for the same as for assets in his hands unadministered.
But the question still remains whether these assets should now be appropriated according to' the rule of priority existing at the time when ther administration was granted and the assets administered, or according to the rule of equality subsequently established by the act of 1839, (3 Stat. Law 240,) which enacts that there *404 after all debts shall be of equal dignity in the administration of estates, and shall be paid as therein declared, ratably, when the assets are not sufficient for the payment of all. This question is not free from difficulty. But the statute does not, by any expression or intimation contained in it, limit its own operation to administrations or letters testamentary granted after its passage, but declares in unqualified terms that “hereafter” all debts shall be of equal dignity in the administration of estates, and shall be ratably paid as thereafter directed. Of course the statute could not operate and was not intended to operate apon assets duly administered before its passage, and did not apply to debts properly paid under the pre-existing laws, and which, therefore, could not be regarded as subsisting debts. But we suppose it was intended to apply to all assets remaining unadministefed at its passage, and to all debts which were then subsisting, or might thereafter be asserted against the estate of the decedent. And as we must assume upon this record that the administrator of Oldham was in fact ignorant of the judgment in favor of Tunstal, and that he acted in good faith in applying the assets for his own benefit to the payment of his own debt and of the other for which he was surety, we think there is no reason why he should not be regarded as a creditor to the extent of these debts improperly paid by him, and as being entitled to an appropriation of the assets found to be in his hands or for which he is liable, ratably, with the judgment debt set up by the complainants. And as it is not shown that there are other creditors of the estate, who are entitled to come into the distribution, the consequence is that the pro rata appropriation of the assets should be confined to the claims just referred to. As the administrator appropriated these assets to his own benefit, he is chargable with interest from the date of the appropriation, and the several claims now brought into comparison, are also entitled to bear interest until the distribution is made among them — the proportion assigned to the claim of the complainants should bear interest until *405 paid. The administrator and his securities are liable for the amount, which should be made out of the assets in the hands of the administrator, or if none, or not sufficient, then out of the proper estate of the administrator and his sureties. And execution should go accordingly.
Thruston 5p Pop? for plaintiff;; Loughborough Sf Ballard tor defendants.
Wherefore, the decree dismissing the bill without prejudice is reversed, and the cause is remanded with directions to render a decree in conformity with this opi do.!.