JUDGE LINDSEY (special judge)
delivered the opinion oe the court:
A paper purporting to be the last will and testament of Eliza Ann Hamilton was presented to the county *363 court of Bath county for probate; and after a contest there by part of those claiming to be her heirs, the same was admitted to record as her will. From this judgment of the county court an appeal was prosecuted to the Bath circuit court, and this court reversed the judgment of the county court. From the judgment of the circuit court an appeal was prosecuted to the court of appeals, and the latter court reversed the judgment of the circuit court, and sustained the probate of the will in the county court. (See 10 B. Mon., 129.)
Subsequently, George Hamilton, a brother, claiming to be an heir, who was a witness in the proceedings in the county court, but not a party to the record, filed his bill in chancery in the Bath circuit court, under the act of 1797, contesting the validity of said paper as his sister’s will, for want of competency on her part to make a will, and because the same was procured to be made by the undue influence of persons over her. His right to maintain his bill in chancery was contested, on the ground mainly that he was barred by the proceedings had at law in the county court establishing the will. The circuit court dismissed his bill, and he appealed, and the court of appeals reversed the judgment, deciding he had the right to maintain the bill in chancery. (See that decision, 14 B. Mon., 31.)
On the return of the cause to the circuit court, the colored persons, appellants herein, for themselves and nearly one hundred other colored persons, came by their counsel, and in open court filed, as the record shows, their petition, answer, and cross-petition, setting out therein that they were interested in sustaining Miss Hamilton’s will, because, by a devise therein, they were set free, or some of them were entitled to a chance of being set free, and were entitled to one hundred dollars each if they *364 elected to go to Liberia, or fifty dollars each if they elected to go to any free State, and that they were also entitled to all their earnings, over and above their necessary expenses, after a named date, and these earnings they alleged to be at that time thirty thousand dollars.
They further stated that no partition had ever been made of the slaves belonging to Archibald Plamilton’s or Maria Plamilton’s estates, and that George Hamilton, the complainant in the bill, and two other brothers of Miss Hamilton, were the persons claiming to own all the ■slaves, and that they had prevented the executor of Miss Plamilton from having partition made and the slaves coming to her interest set free.
The petitioners prayed that' they be made defendants to George Plamilton’s bill; that their petition be taken as an answer and cross-petition against George Hamilton and the others interested ; and, on hearing, that the said colored persons, or such as should be allotted to Miss Plamilton’s interest, should be decided to be free, and a decree rendered in their favor for their earnings.
Process was sued out on this answer and cross-petition, and was served on the residents, and warning order entered against the non-residents, and an attorney properly appointed for them. At a regular term, after the service of process on this answer and cross-petition, without any •formal demurrer having been filed, the questions on the petition, answer, and cross-petition, were submitted, and the circuit court overruled the motion of the appellants to be made parties to George Hamilton’s suit, and refused them the relief asked ; and they appealed to this court.
The devise under which the negroes claim their freedom is as follows:
“ I will all my servants to be free, both those I am entitled to as an heir of my father, Archibald Hamilton, *365 deceased, at this time, and those I will be entitled to as an heir of my father at my mother’s death, and also my portion of the servants of my sister, Maria Hamilton, deceased; and if said servants will go to Liberia, in Africa, I will each one of them one hundred dollars; but if they do not go to Liberia, I will them fifty dollars each, on their permanent removal to a free State. I will that my servants have what they earn after the first day of January next, that is, over and above their expenses and the expense of attending to them.”
The will left it to the discretion of the executor, who was named, as to what time the negroes should be removed.
The first question suggested is, that the order overrul-' ing the motion of the negroes to be made parties, and refusing them any relief, was not such a final one as allows an appeal.
If the negroes were entitled to their freedom under the will, they were necessary parties. (Wood’s executors vs. Wickliffe, 5 B. Mon., 192.) The validity of the paper as a will was the question made by George Hamilton’s bill in chancery, and in this state of case they had a right to demand that they should be made defendants, and should be allowed to make the issue with George Hamilton, and to sustain the validity of the paper as a will, because, if sustained, there was a devise in it which was alleged to give them freédom. The mode taken by their counsel to have them made defendants by presenting their petition, and asking to have the petition taken as an answer and cross-petition, was according to the established chancery practice. It is not perceived how else they could have gotten into court to sustain said paper as a will, or to have resisted a decree declaring it not a will, and to have claimed their rights, if any, *366 under it. For the will had been admitted to probate in the county court, so that they had no cause to go into chancery to have any decree sustaining it. For such a purpose, on their behalf, a court of chancery had no jurisdiction.
Had George Hamilton obtained a decree declaring the paper not a will, the negroes would not have been bound by it, but would have been compelled to rely upon a bill of review to get the inquiry upon the validity of the paper as a will to the point it was at when they petitioned to be made parties. (See Singleton vs. Singleton, 8 B. Mon., 356.)
Here the appellants had set out fully the grounds of their claim to freedom. They were sustained, if at all, by the devise in Miss Hamilton’s will they exhibited; no extraneous proof was required. The facts were as fully admitted by the mode of submission to the court as if a demurrer had been filed, and the decree of the court covered the questions relied upon by the negroes entirely.
Upon the state of pleading, and the issues presented and passed upon by the court, and from the character and effect of the order upon the rights of the parties, our opinion is the negroes had a right to appeal. Indeed, in such case, if there had been no other question decided than the one of their right to be made parties, as they were claiming freedom under the paper sought to be destroyed, we think they had a right to appeal — regarding this case different from that class where persons may or may not be made parties in the discretion of the court, or be left to bring their original suits to maintain their rights.
The other question to be decided is, assuming the paper to be the will of Miss Hamilton, does the devise therein emancipate the appellants and those they rep *367 resent, or any of them? If it does not, they have no cause to complain of the decision of the circuit court against them.
Our opinion is, that the devise under which they claim conferred freedom on none of them.
There had been no partition amongst the heirs of Archibald and Maria Hamilton, either of negroes or lands. They had all lived together and kept the slaves in common, as the appellants show in their petition. Miss Hamilton owned but an undivided interest of one fourth in the slaves, her three brothers owning the other three fourths. Such being the rights of herself and brothers, she could not convert the slaves by any disposition of her one fourth into a state of freedom. The greater interest must be held as controlling. (Tom. Davis vs. Tingle, &c., 8 B. Mon., 514.)
She did not devise her interest in the slaves to her executor, or to any other person to be held until partition should be made, and then the number set off to that interest to go free. The title did not end at her death by the emancipation of all or any of the slaves, as before shown; but it passed by operation of law to her three brothers, untrammeled with any charge or trust to them to emancipate the negroes. This title cannot be taken from them without their consent. Each negro in the hundred or more negroes under the devise would have precisely the same right to go free, and as all cannot go free, none can.
As a will operates at the death of the maker, if it all, and there were no slaves of Miss Hamilton’s to take the benefit of her devise at her death, the devise was void and inoperative.
Our opinion on the whole case is, that the order or decree of the circuit court be affirmed. From this decision Judge Williams dissents.