CHIEF JUSTICE SIMPSON
delivered the opinion op the court:
Thomas C. Woods, by his will, devised all his estate of every description to his wife, Elizabeth P. Woods, during her life.
After the death of his wife, he directed the sum of five thousand dollars to be set apart from the balance of his estate, and loaned out upon interest, and the interest accruing thereon to be paid annually to Alexander White and his wife, Amelia White, during their joint lives, and the life of the survivor. After their death he bequeathed this five thousand dollars to their son, James White, provided he should be then living, and had arrived at the age of twenty-five years.
The whole balance of his estate he devised to his nephew, Thomas Woods, upon the same condition, and with like limitations.
The widow renounced the provisions of the will, and the principal question in this case is, how are the devises in the will, which were to take effect after the death of the widow, affected by this renunciation?
As a general rule, where real or personal estate is devised to one person for life, with an ulterior devise to another person, the ulterior devise vests absolutely upon the death of the testator, and takes effect in possession, whenever the prior devise ceases or fails, from any cause whatever.
But inasmuch as in a case like the present, the act of the widow, by which the prior devise is terminated, may, by withdrawing a considerable part of the estate from the operation *515 of the provisions of the will, tend to defeat some of tbe gifts made by the testator, and affect prejudicially the interests of some of the devisees, the application of this general rule will depend in each case upon the effect it produces on the rights of the other devisees in the will. (Timberlake vs. Parish's ex'r, 5 Dana, 353.)
The residuary legatee is the only person entitled to anything under the will who can be injured by the renunciation made by the widow. The quantity of the estate devised to him will be thereby diminished. Its earlier enjoyment may, however, compensate, in some degree, for this diminution. He will be entitled to the profits which may accumulate on this part of the estate, until the period arrives when the devise is to take effect and the property vest absolutely in the devisee.
As the profits on the legacy of five thousand dollars belonged to the widow during her life, and were not to be enjoyed by the legatees, Alexander White and Amelia, his wife, until after her death, it is insisted that the residuary legatee is entitled to them until that period arrives, under the operation of the rule which gave to the general residuary legatee whatever personal estate might fall into the residue, after the making of the will, by lapse, invalid disposition, or any other cause by which a bequest or devise of any part of the estate was defeated.
This rule of law has, however, been changed by the Revised Statutes. By the 20th section of the chapter on Wills, (p. 696,) it is enacted that, “ unless a contrai-y intention shall appear by the will, such real or personal estate, or interest therein, as shall be comprised in any devise in such will, which shall fail or be void, or otherwise incapable of taking effect, shall not be included in the residuary devise contained in such will, but shall pass as in case of intestacy.”
The will under consideration having been made since the adoption of the Revised Statutes, its construction must be governed by their provisions; and as it does not contain anything which indicates an intention that the profits of the five thousand dollars referred to, which may accrue during the life of the widow, shall in any event constitute a part of the residuary devise, they cannot be thus applied, but their disposition must *516 be determined by some other rule of law, which will best effectuate the intention of the testator.
The residuary devisee is not injured by allowing the bequest to Alexander White and his wife to take effect before the time designated in the will. After their death the money, the profits of which belong to them during their lives, goes under the will to their son, James White, and not to the residuary devisee. And as James White is not entitled to it until their death, his interest therein is not affected by their enjoyment of the profits before the death of the testator’s widow.
Looking to all the provisions of the will, and. considering the effect produced by the act of renunciation upon the rights and interests of all the devisees, we have come to the conclusion that the general rule by which the interest in remainder takes effect, whenever the prior devise ceases or fails, should be allowed to prevail in this case. In consequence of the renunciation by the widow, the intention of the testator cannot be carried into complete effect. But this object will bé more nearly attained, and the rights of the beneficiaries under the will more fully respected, by the adoption of this general rule, than by that of any other which could be applied in such a case.
The widow claims the property belonging to the testator’s estate, which is, by the statute, directed to be set apart by the appraisers of the estate for the benefit of the widow and infant children of the intestate, if there be any residing in the family. (Revised Statutes, 281.j Her right to this property is the next question to be determined.
This provisión is only madé by the statute in cases of intestacy, and the statute does not apply where the estate is disposed of by will. It is, however, contended, that the widow, by renouncing the provisions of the will, becomes entitled to every part of the estate that she would have a right to in case of intestacy.
She cannot claim anything under the will after the act of renunciation, and consequently, so far as she is concerned, her husband may be regarded as having died intestate. Still, however, he did not actually die intestate, and the statute referred to only applies to cases of actual intestacy of personal estate. *517 But, in addition to this, the statute which authorizes the renunciation by the widow, also declares that thereupon she shall receive her dower and distributable share of her husband’s estate, as if no will had been made. The property which she claims is not included in that part of the estate which the statute declares she shall be entitled to when she renounces the provisions of the will. Where it is set apart for the bénefit of the widow and children, it does not go into the hands of the personal representative, or constitute any part of the estate for distribution. But in a case like the present it becomes assets in the hands of the administrator, and aids in the creation of that fund of which the widow is entitled to a distributable share. In this mode she receives a part of it, or at least derives a benefit from it, and she is not entitled to it in any other manner.
It appears that the testator was married in 1848, and that, after the marriage, the father of his wife gave to her several slaves, two of which, to-wit: a woman and her child, were sold by the testator to Amelia B.. Caldwell. His wife united with him in the bill of sale for the slaves, but did not acknowledge it before the clerk of the count}’’ court, nor was she privily examined by him.
Two questions are presented on this state of facts. Is the widow entitled to the slaves so sold; and if she be, has the purchaser a right to recover the present value of the slaves, or only the price paid with interest from the time she is compelled to surrender the possession of them?
1. As the widow’s right to the slaves accrued after the passage of the act of 1846, she could only be divested of the title to them, in the mode prescribed by law, for the sale and conveyance of her real estate. The execution by her of the bill of sale jointly with her husband not having been thus made, is of no validity, did not pass her title to the purchaser, and does not of itself preclude her from asserting her right to the slaves.
2. As there was no fraud in the sale of the slaves, and the sale has failed only because the bill of sale was not executed by the wife according to law, the purchaser is not entitled to *518 recover from the estate of the vendor the present value of the slaves. The bill of sale contains a warranty of title, and her remedy is upon that warranty. The sum paid and legal interest from the time the purchaser is charged with hires for the slaves, is the criterion of damages for the breach of warranty of title to a slave. (7 J. J. Marshall, 110; 4 J. J. Marshall, 142.)
The bank stock is personal estate, but the widow should be allowed, as she desires to do so, to retain her part of it in kind.
The testator’s estate to which the widow is not entitled should be disposed of by the administrator in the same manner it would be if she were dead. In making this disposition of it, the provisions of the will must be regarded, and not be departed from.
The several questions which have been considered by this court were all decided in the court below in conformity with the principles of this opinion, except that which relates to the amount of damages to which the purchaser of the slaves is entitled. She was allowed the present value of the slaves, a sum which greatly exceeds the price she paid for them. In this particular the court erred.
Wherefore, the judgment in favor of John H. Caldwell and Amelia, his wife, is reversed, and cause remanded for further proceedings and judgment not inconsistent with this opinion.
No judgment for costs is to be rendered in this case; but the costs of the appellants must be paid by the administrator, and he will be entitled to a credit for the amount in the settlement of administration accounts.