ELMA RENCH, Appellee, v. BERNADINE ETTA RENCH et al., Appellees; HARRY DELBERT RENCH, Appellant.

WILLS: Refusal of Wife to Accept, Vests Remainder. An election by a wife to take her distributive share, instead of a life estate which the husband proffers to her in his will, as effectually terminates such life estate as her death, at that time, would terminate it, and necessarily works the *immediate* vesting of a remainder which was solely dependent on the existence of such life estate. The vesting of the remainder in the *first* remainderman necessarily forecloses the interest of a *subsequent* remainderman, whose interest was dependent on the inability of the first remainderman to take.

*Appeal from Calhoun District Court.*—M. E. HUTCHISON, Judge.

DECEMBER 14, 1918.

SUIT in partition of land formerly owned by Charles D. Rench, who died testate. The controversy is between devisees of the will, and involves a construction thereof. The trial court entered decree awarding to the widow one third thereof, and to the only child of the testator, the remaining two thirds. Harry Delbert Rench, the contingent devisee, appeals.—*Affirmed.*

*Gray & Gray* and *R. C. Gray,* for appellant.

*S. A. Frick, E. C. Stevenson,* and *I. E. Dougherty,* for appellees.

EVANS, J.—The will in question contained the following provisions:

"1. I direct that all my debts and the expenses of my last sickness and funeral, if any, be paid.

"2. I give to my beloved wife, Elma Rench, in lieu of dower and distributive share under the statute, the use and income from all the rest, residue and remainder of my property, of all kinds, so long as she may remain a widow. I also give her, during such time, full right and power to sell and convey any or all of such property if and when necessary for the support and proper provision for herself and our child or children.

"3. *If my said wife shall remarry,* then the share of the capital stock of the Farmers Savings Bank of Lavinia, Iowa, and the two shares of the capital stock of the Lavinia Elevator Company of Lavinia, Iowa, which I own, shall go to Harry Delbert Rench, the son of my brother Henry T. Rench, and the income from one half of the remainder of my property then undisposed of shall go to my said wife during her natural life, in lieu of dower and distributive share, and the income from the other half shall go to our daughter, Bernadine Etta Rench, if living, until she shall

reach her majority, and then the one half of said property shall vest in her absolutely and the other half shall go to her upon her mother's death. Should our said daughter be dead, without issue, then the share that would go to her shall go to my said nephew. This provision for my said wife is not intended to prevent her from remarrying, but is made with the thought that so long as she shall remain a widow my property should support her, and, if she should remarry, our daughter might not find it pleasant to remain at home with her mother and her new husband.

"4. Should my said wife not remarry, upon her death, the shares of stock described in the next paragraph above, 3rd, shall go to my said nephew as provided in said paragraph, and the remainder of my property then remaining undisposed of shall go to my said daughter or her issue, if any. If she should be dead without issue, the whole shall go to my said nephew.

"5. To recapitulate in a measure, it is my will that whatever property may remain undisposed of at the death of my wife, except said shares of capital stock, whether remarried or not, shall be the property of our said daughter, if living, or of her issue, if any, if she be dead; and, if she be dead without issue, then it shall all be the property of my said nephew."

From the foregoing, it will be observed that, if the widow *had accepted under the will,* and had remained a widow, she would have taken a life estate in the land; and the only child of the testator, if living, would take the remainder, with a possible contingent remainder to Harry Delbert Rench. If the widow had accepted under the will, and remarried, then she would have taken a life interest in one half of the real estate, with a remainder over to the child, if living, and the child would have taken the other half of the land, subject to certain contingencies. On the question of remarriage of the widow, the will took account

of both contingencies of: (1) remarrying, and (2) not re-
marrying. The testator failed, however, to take account,
in his will, of the contingency of non-acceptance by the
widow of the provisions of the will. What happened was
that, in December, 1916, the widow filed her election to
take her distributive share, and thereby to reject the pro-
visions of the will. In March following, this suit was in-
stituted. After the beginning of this suit, and while it was
pending in the district court, in May, 1917, the widow re-
married. Because Paragraph 3 of the will deals with the
contingency of remarriage, and disposes of the property
otherwise than as provided in Paragraphs 2 and 4, and
because the widow has remarried, some confusion has crept
into the argument, by the assumption that the two thirds
of the real estate not included in the widow's distributive
share must be disposed of in accordance with the direction
of Paragraph 3. If the widow had accepted under the will,
and remarried, this assumption would be correct. But in-
asmuch as the widow rejected the will, and did so while
she remained unmarried, the status of the parties became
fixed by such rejection, and at the time thereof. Thence-
forth, the question of remarrying or not remarrying be-
came entirely immaterial, so far as its effect upon the pro-
visions of the will is concerned. In the construction of the
will, therefore, Paragraph 3 thereof may be disregarded.
We must look to Paragraphs 2, 4, and 5 alone, for an as-
certainment of the rights of the remainderman.

I.  Our foregoing statement assumes that the widow
did elect to take her distributive share. This is controvert-
ed by the appellant, who contends that, previous to such at-
tempted election on her part, she had already elected, by
unmistakable conduct, to take under the will, in lieu of
dower. This issue of fact was determined by the district
court in favor of the widow. The evidence upon which such
finding was made was of such a nature as to give to the

trial court peculiar advantages in judging the same. An examination of the record satisfies us that the finding of the court has such substantial support as to forbid our interference therewith.

II. The widow having rejected the will, its provisions in her behalf must be wholly disregarded. The carving out of the estate of the widow's distributive share leaves only two thirds of the estate as subject to the provisions of the will. Such two thirds must be disposed of in accordance with the provisions of the will, and such provisions must be construed in the light of the widow's rejection thereof. Under the will, the testator's daughter is the primary remainderman. Contingencies were specified in the will whereby Harry Delbert Rench, appellant, might have become the remainderman. Under the evidence, we have no need to determine whether the daughter of the testator took a contingent remainder or a vested one. For the same reason, we need not determine the nature of the interest, if any, taken by the appellant as a devisee. The decisive question presented is: What was the effect upon the primary remainderman of the rejection by the widow of the life estate provided for under the will? Clearly, such rejection terminated the life estate. The termination of the life estate removed the only obstacle to the present enjoyment and possession of the estate by the remainderman. The rejection by the widow had precisely the same effect upon the life estate as her death would have had, if it had occurred at that time. Clearly, her death would have completely vested the title and present enjoyment in the primary remainderman, she being still living. The authorities are practically uniform that, in the event of a rejection by the widow of the provisions of the will, such will must be construed as to the remainder of the estate in the same manner as though the death of the life tenant had then occurred, unless the will, by its terms, discloses a contrary intention.

In other words, for the purpose of the construction of the will as applied to the devisees, the rejection of the life estate by the widow was the equivalent of her death, and accelerated the right of the remainderman to enter into the complete possession of the unappropriated part of the devised estate. In 2 Redfield on Wills (3d Ed.) *258, the rule is stated as follows:

"Where the estate in remainder is dependent upon the life estate of the testator's widow, who waived the provisions of the will and took her share under the statute, it was held that estates in remainder vested immediately upon the determination of the estate or interest of the widow."

We have heretofore recognized this rule in *In re Estate of Rawlings*, 81 Iowa 701, and *Everett v. Croskrey*, 92 Iowa 333. See, also, *Estate of Vance*, 141 Pa. 201 (12 L. R. A. 227), and *Holdren v. Holdren*, 78 Ohio St. 276 (18 L. R. A. [N. S.] 272). There is nothing in the terms of the will before us to prevent the operation of such rule of construction. The will is wholly silent as to the disposition to be made in the event of rejection by the widow.

We must, therefore, apply the terms of the will to the devisees in precisely the same manner as though the life tenancy had terminated by the death of the life tenant. If the child of the testator took only a contingent remainder, pending the life tenancy, such remainder became wholly vested with the termination of the life tenancy. This was the holding of the trial court, and its order is, therefore,— *Affirmed.*

PRESTON, C. J., LADD and SALINGER, JJ., concur.