ROSE *v.* ROSE *et al.*

[88 South. 513, No. 21842.]

1. WILLS. *Renunciation by widow given life estate equivalent to termination of estate by death.*
   A renunciation by the widow of a life estate bequeathed her is equivalent to its termination by her death, so far as the vesting in possession of the remainder is concerned, unless a contrary intention of the testator is manifest.

2. WILLS. *Remainder held not to vest upon renunciation by widow given a life estate so as to allow acceleration.*
   Where a clause in a will provides: "To my wife Laura, I give and bequeath for and during her natural life, the house and lot where I now live, fronting on Monroe street and running back

- to North street. Upon the death of said Laura, the said house and lot is to go to such of her children begotten by me as shall then be living, but in case any of said children then be dead and leave issue surviving them, the share of such child or children. to go to their issue"—and the life tenant renounces the will, the remainder estate does not vest in the children at death of testator, but depends upon the contingency as to which children, if any, or their issue, are living at the death of life tenant, consequently there could be no acceleration.

Appeal from the chancery court of Yazoo county.
Hon. V. J. Stricker, Chancellor.

Proceeding between Laura Rose and Otha Rose and others. Decree for the latter, and the former appeals. Reversed and rendered.

*Barnett & Perrin,* for appellant.

The question is a new one in this state, but has been decided in other states. To be frank with the court, the appellant is anxious to carry out the contract made in this case, but feels that before investing her all in a home, she should be assured of a good title.

The matter was fully argued in the court below, and it was there held that the renunciation accelerated the remainder, and that the appellees could convey a good title. The principal authorities relied on in the court below were the following: 23 R. C. L., page 556; *Northern Trust Co.* v. *Wheaton,* 94 N. E. 980; *Holdren* v. *Holdren,* 85 N. E. 537.

We think these authorities warrant the decree of the lower court, and if followed by this court will result in an affirmance of the case, but submit that the principle announced by these authorities is really based upon the cardinal doctrine with regard to the construction of wills, viz.: that the intent of the testator as expressed, should prevail. This being true, the decision of the case then depends upon the construction this court will give to the words used by the testator as follows:

"Upon the death of said Laura, the said house and lot shall go to such of her children begotten by me as shall

then be living, but in case any of said children then be dead and leave issue surviving them, the share of such child or children to go to their issue."

We submit, that without doing violence to the language used, either one of two constructions could be placed thereon: first, that the main object of the testator was to provide a home for his wife during her life, and that the rights of the children were postponed to accomplish this object. Second, to preserve the said home not only for his wife during her life, but also for his children's children, in case any should predecease the wife.

If the first construction is adopted, we believe the application of the doctrine of acceleration will prevail; if the second is adopted, we don't see how the remainder can be accelerated. The courts have adopted various views, contingent we think, largely upon the language used in the testamentary instruments in the particular case.

In *Blatchford* v. *Newberry,* 99 Ill. 11, the doctrine of acceleration of the remainder is recognized, when not contrary to the expressed wishes of the testator, but it was held by a majority of the court, that the gift was not accelerated, because of the language used in the will, which was as follows: "Immediately after the decease of my wife."

In *Augustus* v. *Seabolt,* 3 Met. Ky. 155, where a prior estate devised had failed, the court refused to accelerate the remainder, because so to do would violate the plain language of the testator.

As the facts now are, viz., with all of the children living and none of them married, if Laura was dead, there would be no doubt that the remainder would then be vested, and if the court shall hold as is laid down as the law in 23 R. C. L., page 457, that the renunciation by the widow has the same effect as death, it naturally follows that the children have the fee to the remainder of the said lot. But this holding is based upon the idea that the testator meant, when the life estate was ended, regardless of how it came about, whether by death, by law or by renunciation, that the remainder was then to vest, and on the further presumption that the testator knew his wife had the legal right

to renounce, and bring us back to the original proposition, that the intention of the testator must prevail.

It will be noted, however, that under the will only such children were to take as were living at the time of the death of Laura. We construe this to be a limitation upon the remainder, and if there had been no renunciation, the fee in any one of the children was liable to be defeated by death before the widow and living issue. Does the renunciation do away with the limitation? It does if it has the same effect as death; otherwise not.

In cases where a trust is involved, the courts generally hold that renunciation by the widow will not accelerate a gift, and while we do not claim that there is any trust feature in this case, an examination of these cases may help in the solution of the question here at issue.

In *Toombs* v. *Spratlin,* 57 S. E. 59, it was held that a trust created for the benefit of the widow and children during the life of the widow, with the remainder to the children at her death was not accelerated by a renunciation by the widow.

Where the residue of an estate was left to trustees for purpose of paying an annual income to the widow, the balance thereof to be added to the capital, and after the death of the widow to distribute the fund among certain nieces and a nephew, then surviving or their issue, it was held the renunciation by the widow did not accelerate the distribution of the fund.

The reason given for the decisions in these cases was that the general plan of the testator as declared in the will, could be best carried out, by continuing the trusts, but this reasoning cannot apply to the case at bar for the reason that the general plan of the testator was upset by the renunciation, but they illustrate that in all cases the intention of the testator must prevail.

We think the same rule will apply, whether the clause of the will is construed as a vested remainder or an executory devise. The question involved is an important one, will affect many estates in the future. In the present case we are free to confess that an opinion either way by the supreme court could be rendered without doing violence to the will in question.

For a full discussion of the point involved we refer the court to the note to the case of *Holdren* v. *Holdren,* as found in 18 L. R. A. (N. S.), page 272.

*P. G. Griffin* and *Raynor & Rorquist,* for appellee.

The whole matter in controversy seems to turn upon the construction of an item of a will reading: Item 2. To my wife Laura, I give and bequeath for and during her natural life, the house and lot where I now live, fronting on Monroe street and running back to North street. Upon the death of said Laura, the said house and lot is to go to such of her children, begotten by me, as shall then be living, but in case any of said children then be dead and leave issue surviving them, the share of such child or children, to go to their issue.

As shown in the statement of facts, the wife, Laura has renounced the provisions made for her by this item and in lieu thereof has elected to take her legal share of the estate of her deceased husband. The question now is what interest in the property have the children of said decedent, by the renunciation of the widow have acquired the fee to this property except as to such share as the widow, under the law is entitled. Having gone thoroughly into the matter and having looked diligently for authorities on the matter, appellee concludes that such an item of the will may have created either of two different estates in expectancy; either a vested remainder in the children living at the death of the testator, or a contingent remainder. Of course there is a possibility that such an item would create an executory devise, but due to that rule for the construction of wills which states that if a limitation can take effect as a remainder, as it can in this case, it shall be construed as such and not as an executory devise, we believe that the court reviewing the authorities hereinafter cited, could never construe this limitation as an executory devise.

Relative to the possibility of this estate being a vested remainder, appellee cites *Rood et al.* v. *Hovey et al.,* 15 N. W. 525, the syllabus of which is: "A testator bequeathed a life estate to his widow, remainder to his children now

living, or who may be at the time of her decease to be equally divided. All his children survived him, but two died before the widow, and one left a widow and children. Held, that under the policy of Michigan statutes, and decisions, the estate in remainder vested on the testator's decease and that the heirs at law of the deceased son were entitled to the share of their ancestor. In the case of *Scott et al.* v. *James et al.,* 3 Howard, 307, the nature of which case was somewhat similar to the one at bar. Mr. Chief Justice SHARKEY delivered an opinion the reasoning of which is applicable in the present instance. There is nothing in the will which shows that the testator intended to give the legacies only on the happening of a contingency. The direction was confined to the possession, and not to the right of property. It is distinguishable from those cases of contingent legacies, which are to take effect only on the happening of the contingency. If he had left so much to his daughter on her coming of age, she could have had no right until she was of age, but a fair construction of the will gives a vested legacy to be divided *in futuro.* This, appellee submits, was the intention of our testator. He first wished his wife to have the enjoyment for her life, the right of property he vested in his own children. subject only to the enjoyment by his widow of a life estate; the children immediately acquired the right of property but the right of possession was postponed. In protecting the right of property of each child, begotten by him of Laura, he further directed that if any of such children should not live to enjoy the possession, then the right of such child, deceased, should go to the issue of such child. Far from making the right of property of each of his children defeasible or uncertain, it seems that the intention of the testator was to make the right in each of his children absolutely indefeasible, even if one of such children should pre-decease the widow, for in such an event, he directs that such deceased child's share shall go to the issue of such child, as opposed to going to the brother or sister of such a deceased one. The whole intention of the testator seems to have been the protection of each of his children's interest. In the case of *Kumpe* v. *Coons,* 63 Ala. 448, there was a devise to Mrs. Barclay for life, with remainder over

to her children living at the time of her death, the language of the will being "subject to said charge for the support of my mother-in-law, I devise said lands to Mildred A. Barclay during her natural life. I devise said lands, after her death, to the children of the said Mildred A. Barclay, then living, and the decedents of any deceased child or children; and this was held to create a vested remainder in the children of Mildred A. Barclay who were living at the time of the death, not of Mrs. Barclay, but of the testator; the court by BRICKELL, C. J., saying: "The gift over to the then living children of Mrs. Barclay on the termination of her estate for life is a vested, as distinguished from a contingent, remainder; it is, says Chancellor KENT, the present capacity of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines what distinguishes a vested from a contingent remainder. The opinion of Justice WEAVER in the case of *Archer* v. *Jacobs,* 101 N. W. 195, is very exhaustive on this question and appellees here quote part of that opinion (Page 199, bottom of first column) : "It is next said that even conceding these general doctrines, yet the will of William H. English directs that the estate shall go to his grandchildren or their issue, upon the death, of his daughter; thereby indicating his purpose and intent to have his gift of the remainder vest from that date, and not from the date of his own death. We think this construction cannot prevail. The will gives evidence of having been prepared by a person of experience, and the testator himself must have been a man of intelligence and business sagacity. Had it been his purpose to suspend the vesting of the remainder until his daughter's death, it is very probable he would have said so in unequivocal terms, and not have left it to be arrived at as a matter of inference. Words like those under consideration and others of similar import are of common use in wills, and save in a few exceptional cases, the courts have uniformly held them to refer to the time when the remainderman shall come into the enjoyment of the estate, and not to the time when his interest vests. Such

is the interpretation where the gift of the remainder follows the words, upon the death, or, after the death, or at the death, of the life tenant, or other equivalent forms of expression. In *Kinkhead* v. *Ryan* (N. J. Ch.), 53 Atl. 1053, the words creating the remainder are (having first provided a life estate for the wife) : "After the death of my said wife I give, devise and bequeath all my estate unto by beloved children (naming them) and any other child that may be born hereafter, share and share alike, and their heirs and assigns forever. If any of my said children should die before my said wife, then it is my will that upon my wife's death, the share of my estate which would have gone to such deceased child, shall go to the heirs at law of such deceased child." These words were held insufficient to postpone the vesting of the remainder in the children *in esse.*" In *Beatty's Adm'r* v. *Montgomery's exr's,* 21 N. J. Eq. 324, the same construction was given to the words "from and after the death of my wife, I give and bequeath, etc.;" and it was held that, although each of the remaindermen died before the determination of the life tenancy, the remainder was vested in them, and passed to their representatives. Appellee especially recommends this case of *Archer* v. *Jacobs,* as pointing out fully the law in question.

In view of the foregoing authorities appellees submit that, the children of Laura Rose begotten by the testator, having at the death of testator, acquired vested remainders, now at the termination by renunciation of the life estate, take the fee in possession to said house and lot, except as to such share as is given to the widow under the law; and further submit that any other construction of the will would do violence to the intention of the testator who merely postponed the enjoyment of the property by his children for the benefit of his widow.

Recognizing the soundness of the foregoing construction of the will, appellees, have merely sought to bring the attention of the court to such a construction; but as in the lower court, appellees rely upon the following authorities for the proper construction of this will: "If testator had used the words: 'at the termination of the life estate of said Laura,' instead of the words 'upon the

death of said Laura' in said item of the will, then there
would be no question that at the present the contingency,
i e., the termination of the life estate, having occurred that
the surviving children of Laura and testator would now
have the fee in possession to their shares of said house and
lot. This, appellee contends, is the proper import of the
will; the words 'upon the death of' are to be construed
as meaning the cessation of the enjoyment of the property
by said Laura; and the authorities, in seeking to hold
sacred the intention of a testator, confirm this construc-
tion. Looking to the whole of the will we find that the
intention of the testator was merely to postpone the en-
joyment by his children of the property to the enjoyment
of his widow. No clause or word in the will seems to in-
dicate that the right of either of his children shall be con-
tingent upon the length of his or her life; and therefore
testator could not have intended that the life of his widow
by the contingency upon which the title of his children de-
pended. These words 'upon the death of said Laura'
should not be construed literally, but should be construed
in accordance with their purpose; i. e., fixing a period of
enjoyment for the widow."

The contingency, if any there was created by such a
clause, upon which the title of testator's children depended
was that each child survive the period of enjoyment by the
widow; and now, the widow having renounced, and all
of the children of testator having survived that period of
enjoyment which made their estate contingent, are vested
with the fee to all parts except that part claimed by the
widow under the law.

Appellee refers the court to the following authorities
upon this question: *Holdren* v. *Holdren,* 17 L. R. A. (N.
S.) 272; also the case note at bottom of page, relative to
acceleration of gift over by widow's election against will
giving life estate, 18 L. R. A. 272, 23 R. C. L. 556; *North-
ern Trust Co.* v. *Wheaton,* 94 N. E. 980; *Blatchford et al.*
v. *Newberry et al.,* 99 Ill. 65, dissenting opinion of Mr.
Justice DICKEY; *Fox* v. *Rummery,* 68 Maine, 121, where
the gift in question was to the wife of the testator, during
her natural life and after her decease, to a trustee for the
use of an adopted son named if he should survive her. The

widow renounced the benefits of the will. The heirs of the testator claimed the income of that part of the estate until the actual death of the widow. The court said: "All of the wife's interest in it is at an end as much as if she were dead." The rule is that the extinction of the first interest carved out of the estate accelerated the right of the second taker, and held that the right of the adopted son to that part of the estate begun at once, although, in terms, he was not to take unless he survived the widow. He survived the life estate provided for her in the will.

And "after her decease" meant after the termination of her life estate. Here it, will be observed the words "after her decease," having relation only to a contingency to happen to the prior donee, was held not a qualification as to the ulterior donee, and although to survive her was made a qualification of the ulterior donee (being a contingency to happen to him), still, surviving her was held to mean, surviving her life estate, because the end of her life was a mere limitation or boundary of the first estate, meaning the end of her estate.

And it is respectfully submitted that the decree of the learned chancellor in the lower court should be affirmed.

HOLDEN, J., delivered the opinion of the court.

This is a suit for specific performance, and involves the construction of item 2 of the will of Wash Rose, deceased, which determines the whole case. The testator left surviving him six children, the appellees, and his wife, Laura Rose, the appellant. The provision in the will which we are to construe reads as follows:

"Item 2. To my wife Laura, I give and bequeath for and during her natural life, the house and lot where I now live, fronting on Monroe street and running back to North street. Upon the death of said Laura, the said house and lot is to go to such of her children begotten by me as shall then be living, but in case any of said children then-be dead and leave issue surviving them, the share of such child or children, to go to their issue."

The wife, Laura Rose, renounced the provision made for her in the will, and agreed in writing to purchase the six-

sevenths interest from the children of deceased, but some question arising as to whether the children could convey a good title to Laura Rose, this suit was filed for specific performance, in order to settle the question of title to the property mentioned.

The chancellor held that the renunciation of the will by the wife,. Laura Rose, immediately vested the title and possession in the children of deceased under the rule of acceleration. We think this was error, due no doubt to the incorrect construction of the clause of the will in question.

The rule is well established that a renunciation by the widow of a life estate bequeathed her is equivalent to its termination by her death so far as the vesting in possession of the remainder is concerned, unless a contrary intention of the testator is manifest in the will.

We recognize the rule of acceleration, and possibly would adopt it in this case if it were applicable; but this case is not within it, because the remainder estate did not vest in the children of the testator at the time of his death, but the clause provides a contingency upon which the remainder will vest, that is, that the property shall go to such children "as shall then be living;" that is, living at the death of the life tenant, Laura Rose, the wife. Laura Rose may outlive all of the children, in which event the remainder would never vest in them. Some of the children may not be living at the death of the life tenant, Laura Rose; in that event only the children then living and the surviving issue of deceased children, would take the remainder. So it will be seen that the title in the remainder depends upon the contingency as to who dies first, the wife or the children, and who of the children, or their issue, may be living at the death of the life tenant, Laura Rose. Should any one of the remaindermen die before the life tenant his title would lapse. Therefore he has no present vested title to convey.

Under this view the title in the appellee remaindermen may never ripen into possession and enjoyment. It is only a contingent remainder, subject to defeat by death of the remaindermen.

The principle of acceleration of estates where the life tenant terminates his estate seems to rest upon the reasoning that the life estate is to be regarded as in the nature of a charge upon the gift over, the extinguishment of which allows the ultimate disposition to take immediate effect. The rule seems to be good, and is generally followed whenever the remainder vests at the death of the testator; there being no contingency nor any other testamentary obstacle in the way of immediate possession and enjoyment of the fee. *Holdren* v. *Holdren,* 78 Ohio St. 276, 85 N. E. 537, 18 L. R. A. (N. S.) 272.

Such is not the case before us, and therefore the decree of the lower court is reversed, and judgment rendered here for appellant.

*Reversed and judgment here for appellant.*