### In re WALKER.

No. S. C. B. D. 252.   March 23, 1937.

Rehearing Denied April 20, 1937.

Frank G. Anderson and A. M. Widdows, for State Bar.

612

W. F. Pardoe, for respondent.

PHELPS, J. Accusations of three related instances of professional misconduct were filed against Finis M. Walker, a member of the State Bar of Oklahoma. In due time and in accordance with law, a hearing was had by the administrative committee, at which hearing the testimony and depositions of witnesses were heard and considered. The administrative committee recommended that the respondent be disbarred. The respondent then filed his exceptions to the findings of fact and conclusions of law which were made by the administrative committee, before the Board of Governors of the State Bar, which board then reviewed the proceedings, considered additional depositions, and heard oral argument. The Board of Governors concluded that the respondent had been guilty of one of the accusations, hereinafter discussed, and recommended that he be suspended from the practice of law for a period of one year. The respondent then instituted in this court his proceedings for the review thereof, his main contention being that the findings and recommendations were not supported by the evidence.

We have read and considered the record in its entirety. The evidence reveals that respondent was engaged by a client to represent client's wife and her coheirs in a probate proceeding in Arkansas. Respondent accepted $35 retainer fee at the time of his engagement, and then accompanied the client and another man to Arkansas for the purpose of acquainting themselves with the facts in the case. While there they had a conversation with an attorney by the name of Fowler, concerning Fowler's future participation with them in the case, as local attorney. Respondent and his client returned to Oklahoma and some while thereafter the respondent told his client that he would have to send $35 to the attorney in Arkansas, and asked the client for that amount. This was in addition to the $35 which had first been paid to respondent. The evidence is undisputed that the client paid this additional $35 to the respondent, for the purpose of forwarding it to the local attorney in Arkansas. The evidence is of a highly probable and convincing nature that the respondent did not at that or any other time send the $35 to the attorney in Arkansas, but did retain it for his own use and purposes.

The respondent testified that instead of sending the $35 to the Arkansas attorney by money order or check of his own, he indorsed a check given him by a man by the name of Angel in the sum of $29 and placed said check and $6 in currency in an envelope bearing his return address, which envelope was stamped and addressed and mailed to the attorney in Arkansas; that the letter was never returned to him. The attorney in Arkansas testified by deposition that he had never received from respondent any money or other thing of value, nor had he ever agreed to act with respondent as associate attorney in the probate matter. It developed, further, that Angel had never paid the respondent any check of his own, but had, on an occasion, brought to him a certain check in the sum of $29 from a man in Texas by the name of Glisson, who subsequently testified by deposition that the check was never cashed. It was this check which respondent testified he had mailed to the Arkansas attorney, along with the $6 in currency.

That the client paid the $35 in cash to respondent, and that the Arkansas attorney never received the check and currency which respondent claims he mailed, are facts which are undisputed. The focal point in the case, then, is whether respondent mailed the check and currency to the Arkansas attorney, if in fact he ever received such a check from Glisson. The evidence throws some doubt upon the question of whether, in the first place, Glisson ever sent such a check to respondent; however, we pass that question by. The cross-examination of respondent, and of his witnesses, clearly makes evident the weakness of his contention that he mailed the check to Arkansas. As one illustration: In explanation of the unusual act of indorsing a third person's check and forwarding it, in transmission of the $35 cash intrusted to him by his client for that purpose, instead of by the usual method of money order, cashier's check, or his own personal check, the respondent testified that he sent it this way because the bank and post office were closed that day, and he desired to rush the money right off, so that he could get away to Texas. Later in his testimony it developed that he did not go to Texas for approximately a week after the day upon which he claimed to have mailed the check. Upon being advised that the Arkansas attorney had not received the check, he made no inquiry, nor ever made any inquiry or investigation.

We do not deem it incumbent upon us to discuss in detail the other phases of the evidence in this respect. Suffice it to say that this record has been thoroughly considered. The administrative committee and the Board of Governors could not well have considered the evidence and the reasonableness or lack thereof of the contentions of the parties, as opposed to the facts in the case, and come to any conclusion other than the

one at which they did arrive, namely, that the respondent did not remit the money to the Arkansas attorney. The evidence amply sustains such finding. The recommendation of the Board of Governors, to the effect that respondent be suspended from the practice of the law for one year, is approved, and it is so ordered.

BAYLESS, V. C. J., and RILEY, BUSBY, CORN, GIBSON, and HURST, JJ., concur. OSBORN, C. J., and WELCH, J., absent.