**Elizabeth Goodman ABERG et al.,**
**Appellants,**

**v.**

**FIRST NATIONAL BANK IN DALLAS**
**et al., Appellees.**

**No. 17377.**

Court of Civil Appeals of Texas,
Dallas.

Jan. 23, 1970.

Rehearing Denied Feb. 13, 1970.

**404**

James A. Kilgore, Kilgore & Kilgore, Dallas, for appellants.

David M. Kendall, Jr., Dallas, for appellees.

### CLAUDE WILLIAMS, Justice.

This is a case of first impression in Texas involving the question of acceleration of contingent remainders caused by renunciation of a prior estate.

The suit was filed by First National Bank in Dallas, as trustee, seeking a declaratory judgment pursuant to Art. 2524–1, Vernon's Ann.Civ.St. of Texas, commonly referred to as the Uniform Declaratory Judgments Act, and also seeking instructions from the court pursuant to the provisions of Art. 7425b–24, V.A. C.S., commonly known as the Texas Trust Act.

The facts are undisputed. T. W. Vardell and wife, Lela Barry Vardell, executed two trust indentures, one dated February 28, 1931 and the other December 31, 1931, in each of which the First National Bank in Dallas was named as trustee. Each trust named the settlors' daughter, Lela Vardell Johnson, as primary beneficiary to receive the net income of each trust during her lifetime. Another daughter, Elizabeth

Vardell Goodman, was named as secondary beneficiary in each of the trust instruments. Although there is some variance in the language of the two trust documents, the essential provisions relating to the primary and secondary beneficiaries may be exemplified by quoting from the instrument dated December 31, 1931, as follows:

"(a) The Trustee shall pay the net income to Lela Vardell Johnson for life. After her death such net income shall be paid to T. W. Vardell as trustee for the then living children of the said Lela Vardell Johnson, but he shall have the option of leaving all or a portion of such income with the Trustee to become a part of the corpus; the Trustee shall be discharged from liability with respect to the income paid to T. W. Vardell upon making payment to him. After the death of T. W. Vardell if Lela Vardell Johnson should predecease him, or after the death of Lela Vardell Johnson if she should survive him, the Trustee shall pay the net income to the lineal descendants of Lela Vardell Johnson per stirpes, the payment of any minor's part to be made to the guardian of the minor's estate. If the said Lela Vardell Johnson should die before the expiration of twenty-one years from the date of the birth of the last child born to her, and there should be no lineal descendant of the said Lela Vardell Johnson living to receive such income, it shall be paid to Elizabeth Vardell Goodman, daughter of T. W. Vardell and of Lela Barry Vardell, or to her lineal descendants per stirpes if she be dead.

At the expiration of twenty-one years from the date of the birth of the last child born to Lela Vardell Johnson, or at the death of Lela Vardell Johnson if that be later, the corpus shall be distributed to the then living lineal descendants of the said Lela Vardell Johnson per stirpes. If, however, there should be no lineal descendant of the

said Lela Vardell Johnson then living, the corpus shall thereafter be held in trust by the Trustee for the said Elizabeth Vardell Goodman, if she then be living, and the net income paid to her for life, and after her death the net income shall be paid to her lineal descendants per stirpes until the time hereinafter provided for the distribution of the corpus, the payment of any minor's part to be made to the guardian of the minor's estate. If, however, in the contingency of there being no lineal descendant of Lela Vardell Johnson living at the expiration of twenty-one years from the date of the birth of her last child, or at the death of Lela Vardell Johnson if that be later, the said Elizabeth Vardell Goodman then be dead, the corpus shall be held in trust for the lineal descendants of Elizabeth Vardell Goodman and the income paid to them per stirpes until the time hereinafter provided for the distribution of the corpus. If the said Lela Vardell Johnson shall leave no lineal descendants who shall take the corpus of the trust estate as hereinabove provided, then at the expiration of twenty-one years from the date of the birth of the last child born to Elizabeth Vardell Goodman, or at her death if that be later, the corpus shall be distributed to the then living lineal descendants of the said Elizabeth Vardell Goodman per stirpes.

(b) If no lineal descendants of the said Lela Vardell Johnson or Elizabeth Vardell Goodman live to receive the corpus, then such corpus shall be paid to T. W. Vardell and Lela Barry Vardell, or to the one of them then living if one be dead, and if both be dead, one-half shall be paid to those entitled to receive the same under the provisions of the last will and testament of T. W. Vardell, or to his legal heirs if he shall die intestate, and the other one-half shall be paid to those entitled to receive the same under the provisions of the last will and testament of Lela Barry Vardell, or to her legal heirs if she shall die intestate.

(c) Wherever the word 'children' is used herein, such term shall include children hereafter born as well as those now in being."

Another provision of the instrument provided:

"No assignment or order by any beneficiary by way of anticipation of any part of the income or corpus of this trust shall be valid, but said income and/or corpus shall be paid by the Trustee direct to such beneficiary; nor shall the interest of any beneficiary in the income and/or corpus hereof be subject to the claims of such beneficiary's creditors, or subject to attachment, garnishment or execution or other legal or equitable process or lien brought by or in favor of any of said creditors."

Lela Vardell Johnson subsequently married Kenneth Ellis. She died July 30, 1968 leaving no children, either natural or adopted. Elizabeth Vardell Goodman, the secondary beneficiary, survived her sister, Lela, but she promptly notified the trustee that she was not sure that she cared to accept under the terms of the trust instrument. She later executed a document on October 23, 1968, reading as follows:

"KNOW ALL MEN BY THESE PRESENTS:

That I hereby irrevocably renounce and decline to accept any and all interest in or to the corpus and the income therefrom of the two Trusts created by my father, the late T. W. Vardell, by instruments dated February 28, 1931 and December 31, 1931, respectively, primarily for the benefit of my sister, Lela Vardell Ellis, then Lela Vardell Johnson, who died July 30, 1968, of which Trusts, First National Bank in Dallas is now and at all times since their creation, has been Trustee. The effect hereof shall for all purposes be the same

as though I had predeceased my sister, Lela."

This document was delivered to the trustee on October 24, 1968. Prior to that date Mrs. Goodman received no benefit of either income or corpus from either of the trusts, and no one demanded of her that her decision concerning renunciation be made at an earlier date. She was solvent and owed no substantial debts.

Elizabeth Varell Goodman is a widow, approximately sixty-eight years of age. She has had three and only three children, namely, Elizabeth Goodman Aberg, Robert Vardell Goodman and Anne Goodman Wunderlick. All of these children are over the age of twenty-one years. Robert Vardell Goodman is unmarried and without issue. Elizabeth Goodman Aberg and her husband, Charles P. Aberg, Jr., have five children, four of whom are minors. Anne Goodman Wunderlick and her husband, Joseph Thomas Wunderlick, have nine children, all of whom are minors, the oldest of whom is sixteen years of age and the youngest is two years of age. David M. Kendall, Jr., attorney at law, was appointed by the court to be guardian ad litem for the minor children named.

Based upon these facts the trustee asked the court to declare: (a) whether the document executed by Elizabeth Vardell Goodman on October 23, 1968, constituted a valid renunciation; (b) whether the renunciation operated to accelerate the remainders which followed the life estate of Elizabeth Vardell Goodman so that remainders would vest at the time of the renunciation; and (c) whether the corpus and income of the two trusts should be delivered to Elizabeth Goodman Aberg, Robert Vardell Goodman and Anne Goodman Wunderlick (less appropriate fees and expenses).

The matter was submitted to the court, without a jury, upon an agreed statement of facts. The judgment of the court declared: (a) that Mrs. Goodman's renunciation was a valid renunciation; (b)

that the renunciation did not operate to accelerate the vesting of the remainder interest but that the remainder interest would not vest until Mrs. Goodman died; (c) that under the trust documents the corpus of the trust should be held until Mrs. Goodman died when such corpus would vest in the descendants of Elizabeth Vardell Goodman per stirpes. In the meantime the income would be distributed to the lineal descendants of Elizabeth Vardell Goodman, per stirpes.

Elizabeth Goodman Aberg, Robert Vardell Goodman and Anne Goodman Wunderlick appeal. They contend, in one point of error, that since the trial court found that Elizabeth Vardell Goodman had made a valid renunciation of her interest in the two trusts involved, the court erred in failing to declare that under the proper construction of the trust instruments such renunciation had the same effect as the death of Elizabeth Vardell Goodman, and operated to accelerate the vesting of the corpus of the trusts in the appellants.

Charles Preston Aberg, the Third, and David M. Kendall, Jr., as guardian ad litem for the minors and unborn descendants of Elizabeth Vardell Goodman, in an able brief, present four counterpoints in which they support the trial court's judgment in denying the doctrine of acceleration because (1) the remainder interests are contingent; (2) the trustors evidenced a clear intention that the corpus of the trusts be maintained until the death of Mrs. Goodman or until the expiration of twenty-one years from the date of the birth of her last child, whichever occurs later; (3) that the persons entitled to take the corpus cannot presently be determined; and (4) the "spendthrift provisions" contained in the trusts manifest a clear intention of the trustors that vesting of the future estate be delayed as long as possible.

▐▐ Before proceeding to a resolution of the cardinal question presented it is to be observed that the parties are in

agreement upon two basic principles of law which are applicable to the factual situation here presented. First, the parties concur, and we agree, that the trial court was correct in finding that Mrs. Goodman's renunciation was timely and fully effective. It is well settled that a beneficiary of a trust who has not, by words or conduct, manifested his acceptance of the beneficial interest, may disclaim such interest. Mrs. Goodman received no portion of the benefits of the legacy or trust and her renunciation was clear, unequivocal and timely made. Smith v. Negley, 304 S.W.2d 464 (Tex.Civ.App., Austin 1957, no writ); First City National Bank of Houston v. Toombs, 431 S.W.2d 404 (Tex.Civ.App., San Antonio 1968, writ ref'd n. r. e.); Restatement of the Law on Trusts, 2d Ed., § 36c; and Scott on Trusts, 3rd Ed., § 36.1, Vol. 1, p. 294. Secondly, appellants admit, and we agree, that they must be classified as contingent remaindermen, and not vested remaindermen, following the death of their aunt, Lela Vardell Ellis. Guilliams v. Koonsman, 154 Tex. 401, 279 S.W.2d 579, 582, 57 A.L.R.2d 97 (1955).

While the Texas courts have recognized the doctrine of acceleration where there was a vested remainder [1] appellants concede that our courts have never been called upon to apply the doctrine of acceleration in the instance of a contingent remainder. Much has been written to evidence the fact that there is a clear division of authority in the application of the doctrine of acceleration in favor of a contingent remainder. There are those cases which deny acceleration of contingent remainders based upon the reasoning that the identity of the persons entitled to take the corpus of the trust cannot be determined until the occurrence of the particular contingency specified in the trust instrument. Other cases make no distinction between vested remainders and contingent remainders and apply the doctrine of acceleration following a renunciation by a life tenant unless the trust document contains language clearly showing a contrary intention of the settlor. The cases upon this subject are collated in 5 A.L.R. 460 and 5 A.L.R. 473, supplemented in 164 A.L.R. 1297 and 164 A.L.R. 1433.[2]

1. First City National Bank of Houston v. Toombs, 431 S.W.2d 404 (Tex.Civ. App., San Antonio 1968, writ ref'd n. r. e.).

2. For cases allowing acceleration of contingent interests see: Delaware: Roe v. Doe, 5 Boyce 545, 93 A. 373 (1914); Equitable Trust Co. v. Proctor, 27 Del.Ch. 151, 32 A.2d 422 (1943). England: In re Johnson, 68 L.T.N.S. 20 (1893); Eavestaff v. Austin, 52 Eng.Reprint 480 (1854); Jull v. Jacobs, 35 L.T.N.S. 153 (1876). Ireland: In re Crothers, 49 IR L.T. 35 (1915). Virginia: American Nat. Bank v. Chapin, 130 Va. 1, 107 S.E. 636, 17 A.L.R. 304 (1921); Christian v. Wilson, 153 Va. 614, 151 S.E. 300 (1930). Iowa: Rench v. Rench, 184 Iowa, 1372, 169 N.W. 667. Maine: Fox v. Rumery, 68 Me. 121; Eastern Trust & Banking Co. v. Edmunds, 133 Me. 450, 179 A. 716 (1935); Nelson v. Meade, 129 Me. 61, 149 A. 626. Maryland: Cockey v. Cockey, 141 Md. 373, 118 A. 850 (1922). Pennsylvania: In re Loew's Estate, 291 Pa. 22, 139 A. 582 (1927); In re Schmick's Estate, 349 Pa. 65, 36 A.2d 305 (1944); In re Dulles' Estate, 156 Pa.Super. 405, 41 A.2d 52 (1945). Kansas: Tomb v. Bardo, 153 Kan. 766, 114 P.2d 320 (1941); Ward v. Ward, 153 Kan. 222, 109 P.2d 68, 134 A.L.R. 657 (1941). Oklahoma: Thomsen v. Thomsen, 196 Okl. 539, 166 P.2d 417, 164 A.L.R. 1426 (1946). North Carolina: Cheshire v. Drewry, 213 N.E. 450, 197 S.E. 1 (1938). Florida: Bross v. Bross, 123 Fla. 758, 167 So. 669 (1936); Lowrimore v. First Savings & Trust, 102 Fla. 740, 140 So. 887 (1931). Indiana: Sipe v. Merchants Trust, 109 Ind.App. 566, 34 N.E.2d 968 (1941).

For cases denying acceleration of contingent remainders see: England: In re Cooper, 116 L.T.N.S. 760 (1917). Illinois: Blatchford v. Newberry, 99 Ill. 11 (1878); Hasemier v. Welke, 309 Ill. 460, 141 N.E. 176 (1923); Fowler v. Samuel, 257 Ill. 30, 100 N.E. 143 (1912); Foreman Trust & Savings v. Seelenfreund, 329 Ill. 546, 161 N.E. 88, 62 A.L.R. 201 (1928); Sueske v. Schofield, 376 Ill. 431, 34 N.E.2d 399 (1941); Schaffenacker v. Biel, 320 Ill. 31, 150 N.E. 333 (1925); Campbell v. Campbell, 380 Ill. 22, 42 N.E.2d 547 (1942). Kentucky: O'Rear

The doctrine of acceleration, as applied to the law of property, refers to a hastening of the owner of the future interest towards a status of present possession or enjoyment by reason of the failure of the preceding estate. The Law of Future Interests, Simes and Smith, 2d Ed., § 791, p. 263. Simes and Smith, in § 796 of that treatise, concede that the cases applying acceleration of contingent remainder benefits constitute a deviation from the accepted norms of property law but argue that it is possible to reconcile the apparent conflict in the authorities and that acceleration is justified. In doing so they concede that what the courts are really doing is to rewrite that part of the trust agreement so as to provide for vesting of future estates not only at the death of the last tenant but "upon termination of the life estate." The authors make this very pertinent statement:

"It is believed, therefore, that although the courts may state that contingent remainders are accelerated they are likely to do so only in circumstances when it is reasonable to conclude that the particular condition precedent was not important to the testator in the light of the unanticipated renunciation."

We think this goes to the very heart of the question presented. As stated in Restatement of the Law of Property, Future Interests, § 233, whenever an attempted prior interest is renounced, the desired plan of disposition is inevitably disturbed to some extent. "The then applicable rules of law are designed to minimize the extent of this disturbance. Normally, this is accomplished by accelerating the succeeding interests (see § 231). When, however, a succeeding interest is created subject to a condition precedent not yet fulfilled, acceleration of such interest would frustrate still further the manifested plan of disposition. * * * Under the rules stated in this Section, an interest is not accelerated so long as it continues to be subject to an unfulfilled condition precedent."

The case of Compton v. Rixey's Ex'rs, 124 Va. 548, 98 S.E. 651, 5 A.L.R. 465 (1919), involved the construction of a

v. Bogie, 157 Ky. 666, 163 S.W. 1107 (1914); Keeton v. Tipton, 184 Ky. 704, 212 S.W. 909 (1919); Augustus v. Seabolt, 3 Metc. 155; Shepherd v. Moore, 283 Ky. 181, 140 S.W.2d 810 (1940); Wood's Adm'r. v. Wood's Devises, 58 Ky. 512 (1859). Massachusetts: Brandenburg v. Thorndike, 139 Mass. 102, 28 N.E. 575 (1885). New York: In re Lawrence's Estate, 37 Misc. 702, 76 N.Y.S. 653 (1902); Re Silsby, 229 N.Y. 396, 128 N.E. 212 (1920); Woolley v. Hutchins, 114 Misc. 11, 186 N.Y.S. 769 (1920); Pross v. Anson, Sup., 58 N.Y.S. 2d 26 (1945); (Other New York cases at 164 A.L.R. 1448.) In re Buchner's Will, 153 Misc. 407, 274 N.Y.S. 936 (1934); In re Kent's Estate, 45 N.Y.S.2d 449 (1943); In re Meyer's Estate, Sur., 119 N.Y.S.2d 737 (1953); Matter of Clavin's Will, Sur., 120 N.Y.S.2d 659 (1953); Matter of Mott's Will, Sur., 111 N.Y.S.2d 500 (1952); In re Johnston's Estate, Sur., 102 N.Y.S.2d 544 (1950). Ohio: Wilson v. Hall, 6 Ohio C.D. 570 (1892); Stevens v. Stevens, 121 Ohio St. 490, 169 N.E. 570 (1929). Virginia: Compton v. Rixey's Ex'rs, 124 Va. 548, 98 S.E. 651, 5 A.L.R. 465 (1919); Poythress v. Harrison, 1 Pat. & H. 197; Blackwell v. Virginia Trust Co., 177 Va. 299, 14 S.E. 2d 301, 303 (1941). New Hampshire: Lovell v. Town of Charleston, 66 N.H. 584, 32 A. 160. Maine: United States Trust Co. of New York v. Douglass, 143 Me. 150, 56 A.2d 633 (1948). Mississippi: Rose v. Rose, 126 Miss. 114, 88 So. 513 (1921). Georgia: Swann v. Austell, 5 Cir., 261 F. 465 (1920). Missouri: Crossan v. Crossan, 303 Mo. 572, 262 S.W. 701 (1924); St. Louis Union Trust v. Kern, 346 Mo. 643, 142 S.W.2d 493 (1940). Pennsylvania: Bennett's Estate, 270 Pa. 397, 113 A. 685 (1921); In re Lonergan's Estate, 303 Pa. 142, 154 A. 387 (1931); Reighard's Estate, 283 Pa. 140, 128 A. 847 (1925). Oklahoma: In re Walker, 179 Okl. 611, 66 P.2d 88 (1937). South Carolina: Burkhalter v. Breeden, 165 S.C. 64, 160 S.E. 165 (1931). D.C.: McDonnell v. McDonnell, 72 App.D.C. 317, 114 F.2d 478 (1940). Indiana: Cassidy v. Padgett, 99 Ind.App. 239, 190 N.E. 133 (1934). New Jersey: Ajax Electrothermic Corp. v. First Nat. Bank, 7 N.J. 82, 80 A.2d 559 (1951).

will which contained provisions for a life estate and contingent remainders thereafter. The language of the will in that case is strikingly similar to the language of the trusts involved here. The question of acceleration of the future interest of the contingent remaindermen was clearly presented to the court which made an exhaustive study of the best authorities on the subject. In denying acceleration the court said, inter alia:

> "There can be no acceleration of a contingent remainder, for until happening of the contingency it is uncertain who is to take the estate. 16 Cyc. 651. But where the contingency is the death of a life tenant, the courts have been very liberal in declaring that whatever terminates the life estate, or prevents it from taking effect, is equivalent to the death of the life tenant. But this holding is based upon the presumed intention of the testator, and if such presumption is not warranted by the language of the will, construed in the light of the circumstances surrounding the testator, it will not be made."

The court further stated that all of the cases recognize the rule that the application of the doctrine of acceleration must be in furtherance of the intention of the testator, and never in contravention thereof. Illustrative is Rogers v. Safe Deposit & Trust Co., 97 Md. 674, 677, 55 A. 679, 680 (1903):

> "The doctrine of the acceleration of estates is founded upon the desire of courts of equity to give effect to the manifest intention of the testator, and, when such intention would be frustrated by allowing it, it will be denied."

The correct application of the doctrine of acceleration of contingent remainders is classically illustrated in two cases from the Supreme Judicial Court of Maine. In the first case, Eastern Trust & Banking Co. v. Edmunds, 133 Me. 450, 179 A. 716 (1935), the court, in construing a will creating a life estate with contingent remainders, held that the election of the widow who owned the life estate to renounce the same was the equivalent of her death and therefore the future remainders were accelerated. However, it is important to note that in this case the identity of the members of the class of future remaindermen was definitely determined. In the later case of United States Trust Co. of New York v. Douglass, 143 Me. 150, 56 A.2d 633 (1948), the same court considered the question of acceleration following a waiver of the provisions of the will establishing a life estate. The court pointed out that it was established law that the renunciation by the life tenant does not necessarily invalidate bequests or devises to others and that such action will not operate to accelerate remainders except (1) when the acceleration is the actual or presumed intention of the testator; (2) where the will (or trust agreement) has not expressed or shown a contrary intention or (3) where the remaindermen were definitely ascertainable, and (4) where the expressed or presumed intention of the testator was that the enjoyment of the remainder should not for any reason be postponed. The court then pointed to the express provisions of the trust agreement which, like the ones before us, contained provisions for the remaindermen to be those living at the time of the death of the last tenant. Then the court pointed out that all contingencies have not yet been determined and it is not now possible to know who will be entitled to the remainder of the estate until the death of the life tenant. Accordingly, the court, by distinguishing *Edmunds,* supra, denied acceleration because of the impossibility of identification of possible future remaindermen as well as the fact that the terms and conditions of the trust instrument were not such as to permit a court to say that the settlor intended that renunciation had the same effect as death.

We think that the applicable rule of law is epitomized in Bogert on Trusts,

§ 172, wherein it is stated that "where the remainder interest is contingent, * * * or where acceleration would defeat the donor's general plan for the distribution of his property" the doctrine of acceleration is not applicable.

■ The cardinal rule which we must follow in construing the trust instruments in question, as in construing all instruments, is to seek and enforce the intention of the testator or settlor. To determine this intention, if it be not clearly expressed by the particular language used, we may look to the provisions of the instrument as a whole as well as to the circumstances surrounding its execution. Guilliams v. Koonsman, 154 Tex. 401, 279 S.W.2d 579, 581, 57 A.L.R.2d 97 (1955).

■ We need not be concerned about the provisions of the trust instruments relating to the initial beneficiary, Lela Vardell Johnson (Ellis) for the reason that it is undisputed that she died, without issue. We go immediately to what the settlors said concerning the second beneficiary, their daughter, Elizabeth Vardell Goodman. She was granted a life estate and "* * * then at the expiration of twenty-one years from the date of the birth of the last child born of Elizabeth Vardell Goodman, or at her death if that be later, the corpus shall be distributed to the then living lineal descendants of the said Elizabeth Vardell Goodman per stirpes." It is evident from a reading of these instruments that the settlors clearly intended not only to provide for the welfare of their two daughters during their lifetime but to see to it that the corpus of the estate, following the two life estates, would go to the lineal descendants living at the time of the death of their parents or twenty-one years after the birth of the last child. Thus, to be entitled to a share in the corpus of the estate, the descendants of Elizabeth Vardell Goodman must be living at the expiration of twenty-one years from the birth of her last child, or at her death if that be later. Until

that time the identity of those entitled to take as remaindermen cannot possibly be ascertained. Thus it would appear that the intent of the trustors is manifestly clear. Their plan was to hold the corpus in trust for as long as the law permitted. Following the estate of Lela Vardell Johnson (Ellis), Elizabeth Vardell Goodman would have the income from the estate for life and then her descendants would receive the income until twenty-one years after the birth of her last child or upon her death if that be later, at which time the corpus was to be delivered to her then living descendants. Had trustors desired they could reasonably have required the corpus to be delivered to such descendants upon attainment of age twenty-one by the youngest child living from time to time or the time when no children were living. They did not do so but instead required disposition to be delayed until a specified contingency. Moreover, it appears obvious that the trust instruments were drafted by a skilled expert in the law of trusts. It would have been relatively easy to have provided for acceleration of the contingent estates upon either the death of the life tenant or upon her failure or refusal to accept the benefits of the trust. This they did not do. We find no language in these instruments which would lead a reasonable person to conclude that the express condition precedent was not important to the trustors.

Nor do we think it reasonable to contend that trustors intended that at all times during the continuance of the remainder such was to become a present estate whenever and however the preceding estate was terminated. When the settlors clearly stated that the corpus would not vest until twenty-one years after the birth of the last child of the second life tenant and then to the *then* living lineal descendants per stirpes, they surely must have meant a literal survival of the person named and not merely an unanticipated termination of the life estate. Sueske v. Schofield, 376 Ill. 431, 34 N.E.2d 399 (1941); and

United States Trust Co. of New York v. Douglass, 143 Me. 150, 56 A.2d 633 (1948).

■ The trustors manifested a clear intent that the trusts terminate upon the death of Elizabeth Vardell Goodman or upon the expiration of twenty-one years after the birth of her last child. Vesting of the estate must be postponed at least until the death of Elizabeth Vardell Goodman. Only at that time may it be definitely determined which of her lineal descendants are then living or whether the birth of her last child has occurred. It is settled law that a person is conclusively presumed to be able to have issue as long as he or she is alive. This rule is applied, not only to cases of the determination of title as against persons who would take if there should be issue, but also in cases of the determination of trusts and specific performance of land contracts. Simes and Smith, The Law of Future Interests, 2d Ed., § 777; Hill v. Sangamon Loan & Trust Co., 295 Ill. 619, 129 N.E. 554 (1920); In re LeFranc's Estate, 38 Cal.2d 289, 239 P.2d 617 (1952); Donald v. Troxell, 346 S.W.2d 398 (Tex.Civ.App., Eastland 1961, writ ref'd). Mrs. Goodman is still living so that until her death a determination of who will take pursuant to the trust instruments must await her death. Acceleration at this time would exclude the grandchildren, born and unborn, from a possible right in the beneficial enjoyment of the corpus of the estate. It is impossible to ascertain which of her lineal descendants may predecease her. If one of her married daughters should precede Elizabeth Vardell Goodman in death her children would stand to gain substantially from the distribution of the corpus at the designated time.

We also agree with appellees that the so-called "spendthrift trust" provisions of the documents signed by the settlors in this case should be considered in arriving at the intent of the settlors concerning possible acceleration of the future interests. The provisions of such clause definitely

support the belief that the settlors desired to extend the life of the estate as long as possible. It certainly tends to negate the idea that the settlors contemplated termination of the life estate by renunciation and therefore precipitating distribution of the corpus.

A careful exegesis of the trust instruments before us leads us to the conclusion that the trial court was correct in denying the application of the doctrine of acceleration so that appellants would take the corpus of the estate immediately. Accordingly, we sustain appellees' counterpoints.

The judgment of the trial court, denying the doctrine of acceleration to the particular facts involved here, was correct and is here affirmed.

Affirmed.