MARGARET LOUISE BROSS, a minor, by her guardian, Louise J. Bross, and Louise J. Bross, as guardian of the estate of Margaret Louise Bross, minor, v. CARL O. BROSS, LOUISE J. BROSS, and FLORIDA NATIONAL BANK OF JACKSONVILLE, as executors under the will of the estate of Ernest E. Bross, deceased; CARL O. BROSS, LOUISE J. BROSS, and FLORIDA NATIONAL BANK OF JACKSONVILLE, as trustees under the will of Ernest E. Bross, deceased; LOUISE J. BROSS, widow, CARL O. BROSS; J. FRED BROSS; CLARA DE FRIES, if single, and if married, CLARE DE FRIES, *et vir.;* DOROTHEA DE FRIES, if single, and if married, DOROTHEA DE FRIES, *et vir.;* FREDERICK BROSS, JR., LOUIS BROSS; WILLIAM BROSS; ANNA BROSS, if single, and if married, ANNA BROSS, *et vir.;* EDITH BROSS, if single, and if married, EDITH BROSS, *et vir.;* LILLY MAYER, if single, and if married, LILLY MAYER, *et vir.;* MRS. FRANK HOGAN, SR., *et vir.;* JONAH J. NEWTON; GUY B. TOMLINSON; _____ BROSS, and _____ BROSS, minors and the undetermined and unknown issue and heirs of Margaret Louise Bross, a minor.

167 So. 669.
Division B.
Opinion Filed April 24, 1936.

*Allen C. Grazier,* for Appellants;

*H. W. Holland* and *H. L. Peterson,* for Appellees.

TERRELL, J.—This case arises from the following facts: Ernest E. Bross of Pinellas County, Florida, died testate

August 31, 1931, at St. Petersburg. Impressed with the magnitude of his estate and the objects of his bounty, he, in March of the year of his death, executed an elaborate Will in which he made provision for his wife, children grandchildren, father, brothers, sister, nieces, nephews, and friends.

It now develops that paragraph four is the only part of the Will pertinent to this case and it is as follows:

"I give, devise, and bequeath to my brother, CARL O. BROSS, and my beloved wife, LOUISE J. BROSS, and THE FLORIDA NATIONAL BANK OF JACKSONVILLE, at Jacksonville, Florida, as Trustees, one-third (1/3) of my estate, both real and personal, in the event that the same is in excess of Three Hundred Thousand ($300,000.00) Dollars, and in the event that my estate is less than Three Hundred Thousand ($300,000.00) Dollars, then and in that event I give, devise, and bequeath to my said above trustees the sum of One Hundred Thousand ($100,000.00) Dollars, in trust, nevertheless, for and during the natural life of my said wife, LOUISE J. BROSS, and upon the following uses and purposes, and subject to the terms, conditions and powers hereinafter set forth: To receive, hold, manage, sell, invest and reinvest the same and every part thereof in the manner hereinafter provided and to collect, recover and receive the rents, issues, interest, income and profits thereof, hereinafter called "income," and after deducting the proper and necessary expenses in connection with the administration of the Trust, to pay the same to her in quarterly installments of nearly equal amounts or more often, if needed, and in case of her illness or other emergency, whereby the income becomes inadequate for her comfortable support and maintenance, I authorize my above trustees to pay such sums to her from the principal of such trust fund, as they in their discretion

may deem proper and necessary for her comfortable support and maintenance.

"Upon the death of my wife, LOUISE J. BROSS, or in the event that she predeceases me, I direct that the principal, together with all accumulations of said trust fund be divided into as many parts or shares as there are children and issue of deceased children of mine, *per stirpes* and not *per capita*.

"One part or share shall be set up in a separate trust by my trustees for each share and the issue of each deceased child of mine, the income from which shall be paid in quarterly installments to the said child or in equal shares to the said issue of each deceased child of mine, until the expiration of each respective trust, except that during the minority of any beneficiary, the income shall be applied for the support, maintenance and education of said beneficiary, during his or her minority. The part or share constituting the trust for each child of mine shall be held in trust during the natural life of such child, except that in case of the illness of such child or other emergency whereby the income becomes inadequate for the comfort, support and maintenance of such child, I authorize my executors and trustees to pay such sums to such child from the principal of said trust fund as they, in their discretion may deem proper or necessary for the comfort, support and maintenance of such child.

"Upon the death of each child of mine, for whom a trust has been set up as hereinbefore provided, I direct that the principal of said trust, together with any accumulations shall be paid equally to his or her issue, or in default of issue, to his or her surviving brothers and sisters, *per stirpes* and not *per capita*.

"With respect to the part or share constituting the trust for the issue of each deceased child of mine, I direct that the

principal thereof be held in trust until the youngest of such issue in being at my death shall become twenty-one (21) years of age, or sooner die, in either of which events the principal together with all accumulations shall be paid over to the said issue, share and share alike.

"If any of said issue shall die prior to the expiration of his or her trust then I direct that the share of such issue shall be paid equally to his or her issue, or in default of issue, to his or her surviving brothers and sisters and the issue of any deceased brother or sister *per stirpes* and not *per capita*.

"I desire that the above trust fund be set up and made effective as a preferred and first claim of my estate and no effect given to any other bequests herein until said trust fund is made effective.

"In the event that my wife predeceases me without issue by our marriage, then and in that event I desire that the above trust fund be not created, but that that portion of my estate to be used for the creation of said trust fund become part of my residuary estate, in the same manner as though said trust had never been mentioned in this my Last Will and Testament; and in the event my wife does not predecease me, but dies without issue by our marriage, then and in that event it is my wish that the corpus or body of said trust becomes a part of her estate, subject to disposition by her Last Will and Testament."

The Will was duly probated September 18, 1931, and the trustees named therein qualified as such. Carl O. Bross later resigned and J. J. Newton refusing to serve, H. W. Holland, the next successor named as trustee in the Will qualified to serve. Louise J. Bross, his widow, and Margaret Louise Bross, his only child, born posthumously September 3, 1931, are the sole surviving heirs of the testator

and all who are entitled to inherit under his Will. Louise J. Bross was appointed guardian for Margaret Louise Bross.

The estate of the testator was appraised at $218,861.00, of which $14,100.00 was in real estate including the homestead. The bulk of the estate consisted of 10,000 shares of Traub Manufacturing Company stock which was appraised at $200,000.00. When offered for sale by the trustees it brought $150,000.00. On October 29, 1931, Louise J. Bross dissented from the provisions of the Will in her behalf and petitioned for assignment of dower which in this case was one-half of the estate, there being but one child and the estate consisting of personal property. Section 3630, Revised General Statutes of 1920, Section 5494, Compiled General Laws of 1927. After the widow's dower was assigned to her and the expense of administration was subtracted the net estate did not exceed $75,000.00.

The instant suit was instituted in the Circuit Court of Pinellas County by Louise J. Bross as guardian of Margaret Louise Bross, against the executors, trustees, and other beneficiaries under the Will, pursuant to Sections 4953 and 4954, Compiled General Laws of 1927, praying for a construction of the Will, particularly the fourth paragraph as quoted. The bill also prayed that the court decree that the election of the widow to take dower operated to accelerate the remainders limited upon her life estate as would her death and to decree that the sole minor child of the testator did not take a life estate as was attempted to be provided for her in the Will, with remainder over to her issue, but by the rules of construction and positive law including the Rule in Shelley's Case she took an absolute interest in fee simple discharged of any limitation or remainder whatever.

Answer to the bill was filed and by stipulation of counsel

an agreed statement of facts was submitted on which the issues presented by the bill and answer were argued. A final decree was entered in which the chancellor adjudged that the complainants take nothing by their suit and that the Will of Ernest J. Bross, particularly the fourth paragraph thereof, be construed literally, that is to give Margaret Louise Bross a life estate subject to all limitations and remainders attempted to be set up in the Will rather than an absolute interest or fee simple estate as was prayed for. This appeal is from the final decree.

From this state of facts the first question may be stated as follows: When the Will of a decedent creates a life estate in trust for his widow and at her death a like estate for his daughter, if the widow renounces the provisions of the Will in her behalf and elects to take dower, does such action on her part have the effect of terminating the life estate for the daughter and accelerating a present vestiture of her title in fee simple to the remainder of the estate?

The general rule is that when a testator devises to his widow a life estate with remainder over to others, the election of the widow to take against the Will accelerates the vesting of the remainder interest, but this rule, like all others governing the construction of Wills, yields to the intention of the testator if shown by the instrument. Sorrells v. McNally, 89 Fla. 457, 105 So. 106; 69 C. J. page 1145; Redfearn, *Wills and Administration of Estates in Florida,* 222.

The intention of the testator will be determined by examining the Will. The value of the estate of the testator, as shown by the agreed statement of facts, was much smaller than he anticipated when the Will was executed. He made personal bequests of many thousands of dollars and conditional bequests of much more, but when the widow took her dower the trust constituted the bulk of the estate. By

reason of this and the further fact that the testator left only a wife and one child to participate in the distribution of his estate much of the Will becomes immaterial to the disposition of the case. By paragraph four as here quoted it is shown that the trust fund of $100,000.00 for the benefit of his wife and child was the first consideration of the testator and the trustees were required to provide and make this effective as a preferred claim superior to every other claim against the estate. Other parts of paragraph four are material only in that they point to the intention of the testator.

The trustees were required to hold, manage, .sell, invest, and reinvest the trust fund, collect the rents, issues, incomes, and profits therefrom and after paying the necessary expenses of administration to pay the net income therefrom quarterly or oftener if need be to Louise J. Bross for her life and at her death they were required to divide the principal of the trust fund into as many parts as there were children or issue of deceased children of the testator and the income therefrom paid to them for their respective lives, and at the death of each child the corpus of the trust fund to be paid to the issue of such deceased child or in default of issue to the surviving brothers and sisters *per stirpes* and not *per capita*. The Will also provided that if there were no children of the testator the entire corpus of the trust fund should go to his widow absolutely to be disposed of by her Will.

Since the testator left no issue except Margaret Louise Bross the clear effect of the Will was to provide a trust fund of $100,000.00 for Louise J. Bross for life and at her death to Margaret Louise Bross for life and at her death the corpus of the fund was' to be divided among her children. Other contingencies were set out in the Will, but

being immaterial they are not discussed. The testator was presumed to know that he could not will against his wife's dower. The Will shows that his first consideration was for his wife, then, for his children, and lastly for his grandchildren. The wife renounced the provisions of the Will in her behalf and had her dower allotted. This left a total estate of not exceeding $75,000.00 for Margaret Louise Bross, who was four years old at the time of the final judgment herein. The testator apparently provided for all contingencies except the one which actually arose, but which was presumed to know might arise. Since he made his Will with knowledge of the law, we may reasonably presume that he intended it to stand as to his child even if the widow did elect to take her dower. The Will evinces no purpose whatever to terminate the child's life estate in the event the mother by choice terminates hers. No improper management is suggested nor is it claimed that the child or the estate would be placed in better hands or in any way improved by a change in management. The beneficiary being only four years old acceleration of her interest could amount to nothing more.

The rule by which a widow's election to take against the Will amounts to her death and accelerates the payment of bequests in remainder is applicable in those cases where the Will has no purpose other than to preserve the estate for the widow during her lifetime. This rule is not applicable where there are other trusts in the Will to be executed besides the widow's and the intent of the testator requires them to be executed during the life of the widow and for longer. This rule not only applies as to a trust in favor of the widow, but in any case where a trust is created by will for the benefit of persons other than those renouncing, it is not extinguished as to those who do not renounce it.

Wallace v. Wallace, 118 Fla. 844, 160 So. 377; Rose v. Rose v. Rose, 126 Miss. 114, 88 So. 513; Brandenburg v. Thorndike, 139 Mass. 102, 28 N. E. 575; Windsor v. Barnett, 201 Iowa 1226, 207 N. W. 362; Stevens v. Stevens, 121 Ohio St. 490, 169 N. E. 570; 69 C. J. page 1145; Portuondos Estates , 7 Pa. Dist. 92; Kerrigan's Estate, 5 Pa. Dist. 125, 17 C. C. 439; Christian v. Wilson, 153 Va. 614, 151 S. E. 300.

The Will under review is well within the doctrine announced in Wallace v. Wallace, *supra,* and other cases cited supporting the like rule. The trust for the benefit of Margaret Louise Bross is still to be executed and the distribution among her issue, if she has any, is still to be made and the intent of the testator as to these bequests is clear and positive. The dissent of the widow in no sense affects the trust for the child of the testator except to accelerate its maturity. For all the record shows it can be as well executed severed from as combined with the trust for the widow. It is in the hands of those designated by the testator to execute it and on the showing made we feel impelled to let it rest there.

It is next contended that regardless of whether the life estate of Margaret Louise Bross was terminated and vestiture of her title in the remainder of decedent's estate accelerated when the widow elected to take against the Will, by the very terms of paragraph four, when that contingency arose, the Rule in Shelley's Case became the applicable law, under which a fee simple rather than a life estate vested in Margaret Louise Bross.

In urging the application of the Rule in Shelley's Case to this state of facts complainant also contends that the intention of the testator, the rule against remoteness, and the

rule against holding in disfavor remainders in personal property support the application of that rule.

What we said in support of our judgment on the previous question would seem to dispose of the matter of the intention of the testator in its application to the instant question. The cases cited by appellant in support of her position on this point have been examined and are approved as to the facts involved, but as previously pointed out the question of whether the vestiture of the title of Margaret Louise Bross in the remainder of the testator's estate was accelerated when the widow took against the Will is one of intention on the part of the testator and we think the Will completely negatives any purpose to destroy the life estate for the child. Only the beneficial interest in it was accelerated when the widow renounced.

As to the rule against remoteness it is sufficient to say that all the authorities favor the early vesting of title unless the will is of doubtful meaning or indicates a reasonably clear intention to the contrary. Sorrells v. McNally, 89 Fla. 547, 105 So. 106. The Will in the instant case could hardly be clearer on this point. True, the testator had no way of foretelling the age of his issue at the time of his death, but he made his Will charged with knowledge that some or even all of them might be infants, the Will shows that he had that fact in mind when he made it and to now grant the contention of the appellant would amount to rewriting the Will contrary to the expressed intent of the testator.

On the question of remainders in personal property it is quite true that in the early period of the law future estates, remainders or estates tail in personal property were not permitted. If language devising realty creates an estate tail it will pass an absolute title if the property is personalty.

While not followed by all courts, this rule has been frequently followed in the construction of wills. It has no application here because we are dealing with a trust fund set up with specific directions for its administration. This rule is not an inflexible one, but like others with reference to the interpretation of wills, it gives way to the intention of the testator. It is of common law vintage and like others of its class it is by necessity being modernized to include personalty as well as realty.

The rule in Shelley's Case was a common law device designed primarily to break up feudal estates and throw them back in the channels of trade. Some of the recent inheritance tax laws were similarly designed for the purpose of breaking up large estates in personalty. The Rule in Shelley's Case did not originally apply to personal property, but the courts now apply it to both realty and personalty. 24 R. C. L. 907. It is in force in this State. Omohundro v. Talley, 100 Fla. 1553, 131 So. 398. It was defined in Russ v. Russ, 9 Fla. 105, as follows:

"Where the ancestor takes an estate or freehold, either legally or equitably, by deed, will or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs or the heirs of his body, as a class of persons to take in succession from generation to generation, the limitation to the heirs entitled the ancestor to the whole estate."

This definition is like the "statement of questions involved," in briefs that frequently reach this Court, short on perspicacity, but long on redundancy. The rule is clearer in its application to a given state of facts than it is in its abstract statement. But its effect, when a freehold estate is granted to one for life with remainder, mediately

or immediately to his heirs or the heirs of his body the word "heirs" (or words of similar import) is a word of limitation and not of purchase. In other words, the word "heirs" has reference to the duration of the estate conveyed rather than to the person who takes it. If the remainder is limited to one other than the heirs of the first taker the limitation is valid, but if the limitation was to the heirs of the first taker or to the heirs of his body it vested a fee simple or a fee tail. To illustrate, under the Rule in Shelley's Case, if an estate is conveyed to "A" for life with remainder to his heirs, an absolute fee simple title vested in "A"; if it were to "A" for life with remainder to the heirs of his body, "A" would take an estate tail. Such words being considered words of limitation and not words of purchase, the heirs of "A" took by descent only. Redfearn, *Wills and Administration of Estates in Florida,* and cases cited, 248, *et seq.*

The test determining *vel non* the application of the Rule in Shelley's Case is whether the will tends to create an estate in the nature of a perpetuity or continues an estate for generation after generation indefinitely and unbroken in the same family without the right of free alienation. If it does this the rule breaks the succession by vesting the first taker with a fee, but if the succession is limited to the heirs of the body of the first taker he takes a fee tail and the succession is broken with his issue.

The Rule in Shelley's case is a rule of construction rather than an arbitrary rule of law and does not prevail over the intention of the testator in this State. The intention of the testator will be determined from the context of the whole instrument and if in conflict with a technical application of the Rule in Shelley's Case the intent of the testator will be enforced. It has been held that the rule will not

apply, when, as in this case, the legal estate is in trustees and the equitable estate is in the *cestui que* trust and the two cannot coalesce. Perry on Trusts 358; 24 R. C. L. 897; Steele v. Smith, 84 S. C. 464, 66 S. E. 200.

There is also a well recognized line of cases holding that the Rule in Shelley's Case does not apply to executory trusts which are carried into effect by a conveyance from trustees of the legal estate, and when it is apparent from the Will creating the trust that the testator only intended to give a life estate to the first taker, remainder to his heirs or others in fee. Arnold v. Wells, 100 Fla. 1470, 131 So. 400; Wagstaff v. Lowerre, 23 Barb. (N. Y.) 209; Siceloff v. Redmon, 26 Ind. 251; Bucklin v. Creighton, 18 R. I. 325, 27 Atl. 221; Wayne v. Lawrence, 58 Ga. 15; Shaw v. Robinson, 42 S. C. 342, 20 S. E. 161; Angell, Petitioner, 13 R. I. 630; note 29 L. R. A. (New Series) 1136.

The trust involved in this case is executory and within the rule announced in the foregoing cases, but aside from that there are other reasons why the Rule in Shelley's Case cannot apply. It is forestalled by the intention of the testator as expressed in the Will, the inheritance is not unduly prolonged, the rule against perpetuities is not infringed, and by the terms of the Will the inheritance must be broken up and dissipated among the issue of Margaret Louise Bross with full power to alienate.

The Rule in Shelley's Case being inapplicable and the election of the widow to take against the Will being ineffective to accelerate the vestiture of Margaret Louise Bross's title in the remainder, it follows that the judgment below must be and is hereby affirmed.

Affirmed.

Ellis, P. J., and Buford, J., concur.

772

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.